JAMES J. MAHER & others *vs.* TOWN OF BROOKLINE & others (and a companion case [1]).

Norfolk. February 4, 1959. — May 14, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, & CUTTER, JJ.

*Fire Prevention. Public Safety. Building Laws. Lodging House. Nursing Home. Regulation. Constitutional Law,* Equal protection of laws, Police power, Delegation of powers. *Brookline.*

The authority of aldermen and selectmen under G. L. c. 143, § 46, to make regulations for prevention of fire and protection of life in case of fire respecting hotels, boarding or lodging houses, and family hotels is not limited to dealing with buildings above a minimum size and capacity or to dealing with nonstructural matters. [211–212]

G. L. c. 143, § 46, authorizing aldermen and selectmen to make supplementary regulations for prevention of fire and protection of life in case of fire respecting hotels, boarding or lodging houses, and family hotels does not conflict with other provisions of c. 143 dealing with various aspects of such matters and providing for local building codes. [212–213]

The grant of authority by G. L. c. 143, § 46, to aldermen and selectmen to make supplementary regulations for prevention of fire and protection of life in case of fire respecting hotels, boarding or lodging houses, and family hotels is a valid delegation of legislative power. [213]

Regulations for prevention of fire and protection of life in case of fire promulgated by selectmen under G. L. c. 143, § 46, and applicable to lodging houses but not to hotels were not invalid as denying the lodging house owners equal protection of the laws. [213–214]

---

[1] The companion case is Aspinwall Nursing Home, Inc. *vs.* Town of Brookline & others.

Maher *v.* Brookline.

Neither G. L. c. 111, § 71, nor regulations made thereunder prevented selectmen from making regulations promulgated under c. 143, § 46, for fire prevention and protection of life in case of fire applicable to convalescent and nursing homes in their town. [214–215]

Regulations made by selectmen under G. L. c. 143, § 46, for prevention of fire and protection of life in case of fire and in terms applicable to "every lodging house required to be licensed under" c. 140 were applicable to a convalescent and nursing home providing also lodging for aged persons and constituting a "lodging house" within c. 140, § 22. [215–216]

Two BILLS IN EQUITY, filed in the Superior Court on June 25, 1958, and May 14, 1958, respectively.

The suits were reported by *Noonan, J.,* and *Lurie, J.*

*Charles C. Worth,* (*Philip M. Cronin* with him,) for the plaintiffs Maher and others.

*David L. Whitney,* for the plaintiff Aspinwall Nursing Home, Inc.

*Daniel G. Rollins,* Town Counsel, (*Albert R. Mezoff* with him,) for the defendants.

RONAN, J.  In the first of these cases, representatives of one hundred two lodging house owners in the town of Brookline challenge the validity of certain fire safety regulations passed by the selectmen of that town.  In the second, a convalescent and nursing home seeks a determination that it is not within the purview of those regulations.  Both cases have been reported without decision for adjudication by this court.

### THE FIRST CASE.

General Laws c. 143, §§ 44 and 45, require that the proprietors of hotels, boarding or lodging houses and family hotels take certain precautions in the matter of fire safety. Section 46 then provides (in part) that ". . . the selectmen of towns may prescribe . . . further provision for the prevention of fires and for the better protection of life in case of fire to be made by the keepers of hotels, boarding or lodging houses or family hotels within their . . . towns . . . ." Purporting to act under the authority of § 46, the selectmen of Brookline passed a series of regulations, designated "Lodging House Regulations," the purposes of which are

the prevention and the warning of fires and quick egress in case of fire. It is alleged in some instances that the structural alterations and installation of fire resistant materials made necessary by the regulations would involve substantial expenditures by the owners.

The plaintiffs contend that the legislative history of § 46 shows that it is intended to apply only to hotels, boarding houses or lodging houses of a minimum capacity and size rather than to all such buildings, and, secondly, that the section is limited to the matter of "watchmen, lighting, alarm systems and notices of means of escape" — nonstructural matters — and that it does not authorize the regulation of matters of construction and structure, dealt with elsewhere in G. L. c. 143.

Section 46 had its genesis in c. 251 of St. 1883. Section 1 of that chapter set out certain requirements, the purpose of which was to facilitate egress in case of fire: Two night watchmen were to be kept in hotels, boarding or lodging houses having one hundred or more rooms and being four or more stories high; one night watchman, for such buildings being three stories high and having at least fifty but less than one hundred rooms; and a designated system of alarms and proper methods of egress for both categories of buildings. Section 2 of that chapter required fire escapes of approved construction for hotels, guest, boarding or lodging houses, and certain other buildings, being three or more stories high and housing or employing specified numbers of persons. Section 3, the ancestor of the present § 46 of G. L. c. 143, provided (in part) that ". . . the selectmen of towns . . . shall prescribe as they deem necessary, except so far as is specifically required in the preceding sections . . . what further provisions for the prevention of fires, and for the better protection of life in case of fire, shall be made by the several keepers of hotels, boarding or lodging houses within their respective limits . . . ." It is to be noted that the original statute was not limited, as the plaintiffs contend, to watchmen, alarms, notice of means of escape and the like, but dealt (in § 2) with structural matters relating

to fire prevention and egress, and required the approval of the local building inspector in this matter of construction of fire escapes. It is to be noted also that § 3 of St. 1883, c. 251, unlike and in contrast to §§ 1 and 2 thereof, was not limited to buildings of a specified minimum capacity or size; it applied to all hotels, boarding and lodging houses regardless of size.

Section 3 of St. 1883, c. 251, has not been changed in respects here material in the course of achieving its present form in G. L. c. 143, § 46, and has always conferred upon selectmen the broad power to prescribe further provision for the prevention of fire and for the better protection of life in case of fire to be made by keepers of hotels and of boarding and lodging houses. Section 2 of the 1883 statute, through a succession of amendatory acts, is now found in G. L. c. 143, § 21. (Section 1 of the 1883 statute appears in § 44.) Nothing in the history of these sections since 1883 indicates any legislative intention (a) to cut down the authority of the selectmen under § 46 to prescribe additional regulations or (b) to impose any limitation of size or capacity of the facilities which may be made subject to such regulation. Nor do we interpret the history of this legislation as limiting the authority of the selectmen to nonstructural matters. The authority granted under § 46 necessarily includes the power to make regulations dealing with such matters as egress facilities, fire doors and stops, fire resistant walls and ceilings and the like, although such regulations may require that the facilities be altered structurally.

The plaintiffs contend, however, that the lodging house regulations are invalid because they conflict with other sections of c. 143, specifically §§ 3, 21, 22, and 24, the general sections dealing with the authority for local building codes and the sections dealing with fire escapes and fire extinguishers.

The provisions of §§ 44, 45, and 46 are designed to supplement these prior provisions in c. 143 by establishing certain standards relating to fire safety with respect to hotels and lodging houses beyond those applicable to buildings gen-

erally. Like other supplementary provisions in that chapter which relate to theatres and halls and to schoolhouses, the provisions are part of a statutory system to require that these facilities be as safe as their particular public use demands. That the implementation of such a legislative policy may be left to local authorities under an express delegation of power is well settled. *Salem* v. *Maynes,* 123 Mass. 372. *Commonwealth* v. *Slocum,* 230 Mass. 180, 190. *Opinion of the Justices,* 286 Mass. 611, 617–618.

The plaintiffs also contend that the lodging house regulations, which by their terms apply only to lodging houses, are invalid as a denial of equal protection of the laws for the reason that no similar regulations have been prescribed as applicable to hotels within the town. Equal protection of the laws requires that all persons similarly situated be treated alike. *Old Colony R.R.* v. *Assessors of Boston,* 309 Mass. 439, 446. *Opinion of the Justices,* 332 Mass. 769, 779–780. *Barbier* v. *Connolly,* 113 U. S. 27, 32. Equal protection does not, however, prohibit differences in treatment where there is a basis for those differences reasonably related to the purposes which the regulations seek to accomplish. *Bogni* v. *Perotti,* 224 Mass. 152, 157. *Commissioner of Corps. & Taxn.* v. *Coöperative League of America,* 246 Mass. 235, 239. *Commonwealth* v. *Boston & Maine Transp. Co.* 282 Mass. 345, 351. *Howes Bros. Co.* v. *Unemployment Compensation Commn.* 296 Mass. 275, 287, cert. den. 300 U. S. 657. *McQuade* v. *New York Cent. R.R.* 320 Mass. 35, 38. *Watson* v. *Maryland,* 218 U. S. 173, 178. Taking the scheme of the regulations as a whole as well as their individual provisions, it becomes apparent that they are adapted to conditions peculiar to lodging houses and not substantially applicable to hotels. There are, for example, provisions dealing with lodging houses which are also convalescent homes or boarding homes for the aged; with the minimum width of egress facilities for "the removal of a patient by stretcher"; with cooking in rooms; with portable heaters, and the like — provisions which were obviously framed with the peculiar characteristics of lodging houses in mind, and

which would not necessarily or normally be appropriate if applied to hotels. Differences in purpose, use, construction, size and the like afford a rational basis for a differentiation between lodging houses and hotels with respect to these fire safety regulations.

## The Second Case.

What we have said in the *Maher* case also disposes of the plaintiff's contention in this case that the board of selectmen of Brookline were without authority to promulgate the lodging house regulations.

A second contention of the plaintiff in this case, namely, that the selectmen by their regulations "are attempting to license a type of enterprise the licensing of which the Legislature has reserved to the department of public health" under G. L. c. 111, § 71, a licensing statute, is clearly without merit. That statute specifically allows concomitant local authority in the area of fire safety and related matters. It provides (in part) that "no original license shall be issued hereunder over the written disapproval of the local authorities having jurisdiction and no license shall be issued or renewed hereunder unless there shall be first submitted to the department by the authorities in charge of the hospital, sanatorium, convalescent or nursing home, infirmary, or rest home with respect to each building occupied by patients, a certificate of inspection of the egresses, the means of preventing the spread of fire and the apparatus for extinguishing fire, issued by an inspector of the division of inspection of the department of public safety, and a certificate of inspection issued by the head of the local fire department certifying compliance with the local ordinances. . . . Nothing in this section . . . shall be construed to revoke, supersede or otherwise affect any laws, ordinances, by-laws, rules or regulations relating to building, zoning, registration or maintenance of hospitals, sanatoria, convalescent or nursing homes, infirmaries maintained in towns, or rest homes." The regulations adopted by the department of public health under the authority in part of this section are fully as explicit with

respect to local authority: § I, C, l, h, "A certificate of inspection issued by the head of the local fire department, certifying compliance with the local ordinances is a prerequisite for licensure." Clearly neither G. L. c. 111, § 71, nor the regulations promulgated under its authority prevent the local authorities from applying their rules of fire safety to the institutions required to be licensed under the statute. *Ralston* v. *Commissioner of Agriculture,* 334 Mass. 51.

The town's regulations made under c. 143, § 46, in terms (§ 1) apply only to "every lodging house required to be licensed under Chapter 140 of the General Laws, within the Town of Brookline." It may well be that the regulations could have been made broader by not limiting the definition of the term "lodging house" to those within c. 140, especially § 22, which defines a "lodging house" as "a house where lodgings are let to five or more persons not within the second degree of kindred to the person conducting it, and shall not include dormitories of charitable, educational or philanthropic institutions." The purpose of the provisions of c. 140, §§ 22–32, may be largely the prevention of immoral conduct, but the definition in § 22 is in terms broad enough to include nursing and convalescent homes run for profit, and the requirements of §§ 23–32 are not necessarily plainly inappropriate to such homes. In the absence of any statutory provision exempting these establishments from the requirements of §§ 23–32, they must be taken to be within the scope of the definition of § 22. At the moment, the plaintiff is licensed upon its own application under c. 140, § 23. It is not now in a position to contend that it is not required to abide by regulations applicable to one so licensed. *Shemeth* v. *Selectmen of Holden,* 317 Mass. 278, 280. Even if it were not so licensed, upon the facts revealed by the present record the plaintiff has not established any facts taking it out of the class defined in c. 140, § 22. The fact that the plaintiff's house provides lodging (as well as nursing and convalescent care) to persons of advancing age, or who are convalescing from illness, does not make the premises any less a lodging house within § 22. On the contrary, this circum-

stance, with the responsibility it involves, makes it the more reasonable, if not imperative, that the statute apply.

The regulations complained of are valid and applicable and in each case a final decree is to be entered so stating.

*So ordered.*