COMMONWEALTH *vs.* HENRY'S DRYWALL CO., INC.

Middlesex.    October 7, 1974. — December 24, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & KAPLAN, JJ.

*Constitutional Law,* Due process of law, Equal protection of laws, Police power.    *Stilts,* Use in construction.

General Laws c. 149, § 129B, making it a criminal offense for an employer engaged in construction work to require or knowingly permit employees to use stilts in such work, might have reasonably been thought by the Legislature to bear a rational relation to the safety of the employees and the quality of their work, and does not unreasonably interfere with the employer's pursuit of the business or deny him due process of law [543-544]; nor does the statute deny him equal protection of the laws in that it does not prohibit use of stilts in other trades or by a self-employed person [544-547].

COMPLAINT received and sworn to in the First District Court of Eastern Middlesex on January 24, 1968.

On appeal, the case was heard in the Third District Court of Eastern Middlesex by *Lack,* J., without jury.

*Robert M. Mardirosian* for the defendant.

*Terence M. Troyer,* Assistant District Attorney (*Bonnie*

*H. MacLeod-Griffin,* Assistant District Attorney, with him) for the Commonwealth.

HENNESSEY, J.    On February 6, 1968, the defendant corporation was found guilty in a District Court on a complaint charging violation of G. L. c. 149, § 129B (inserted by St. 1964, c. 233, and as appearing in St. 1967, c. 261), in that it "being a corporation engaged in construction work, did require or knowingly permit . . . a person employed by it in such work to use certain devices commonly called stilts, designed to be attached to the feet or legs of such employee for the purpose of elevating him to high placed or positioned work."

Pursuant to G. L. c. 278, § 18, the defendant appealed to the Superior Court and on September 13, 1968, the case was transferred to the Third District Court of Eastern Middlesex for trial de novo. The case was continued on ten separate dates until December 10, 1971. At that time, the case was reported to this court under the interlocutory provisions of G. L. c. 278, § 30A, the defendant requesting that we review its motion to dismiss.[1]

We concluded on the basis of the record before us, including the series of unexplained continuances avoiding what in all probability would have been a very short trial, that the case was not an appropriate one for interlocutory review by this court in that it did not appear likely that the report presented serious questions, the resolution of which would substantially facilitate proceedings in the trial court.[2] *Commonwealth* v. *Henry's Drywall Co. Inc.* 362 Mass. 552 (1972). Accordingly we set aside the stipulation

---

[1] The defendant moved to dismiss on the ground that § 129B violated the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution as well as equivalent provisions of our State Constitution. That is the precise issue presently before us.

[2] We noted that four years and nine months had elapsed since the complaint had first issued and that the defendant had originally been found guilty within two weeks following the issuance of the complaint. Moreover, the record did not indicate that a trial de novo as requested by the defendant would be either prolonged; expensive, involved or unduly burdensome on the parties or the court. *Commonwealth* v. *Henry's Drywall Co. Inc.* 362 Mass. 552, 556 (1972).

that the parties had entered into,[3] discharged the report, and remanded the case for further proceedings. *Id.* at 557.

On April 25, 1973, after a hearing in the Third District Court of Eastern Middlesex, the defendant's motion to dismiss was denied. In a jury waived trial de novo on appeal, the defendant was found guilty and fined $100.

The defendant by a bill of exceptions appeals from this conviction arguing that G. L. c. 149, § 129B, violates the guaranties of our Federal and State Constitutions in that it denies the defendant equal protection of the laws and further deprives him of liberty and property without due process of law.[4]

We note at the outset that when a challenge is made to the constitutionality of a legislative enactment, the person making the challenge has an onerous burden of proof in establishing the invalidity of the statute. *Commonwealth v. Chamberlain,* 343 Mass. 49, 51 (1961). *Hall-Omar Baking Co.* v. *Commissioner of Labor & Indus.* 344 Mass. 695, 701 (1962). *Pinnick* v. *Cleary,* 360 Mass. 1, 14 (1971). *Jewel Cos. Inc.* v. *Burlington,* 365 Mass. 274, 277-278 (1974). The court, in defining that burden of proof, has stated that it will afford a presumption of constitutionality to the legislative enactment which means that all rational inferences are made in favor of the legislation. *Howes Bros. Co.* v. *Unemployment Compensation Commn.* 296 Mass. 275, 284 (1936), cert. den. 300 U. S. 657 (1936). *Merit Oil*

---

[3] The stipulation had apparently provided that the use of stilts was no more hazardous than general types of scaffolding or staging.

[4] Exceptions were also taken to the exclusion from evidence of questions through which the defendant sought to establish the relative safety of stilts as compared with other forms of scaffolding. It is not inconceivable that the defendant's case would have been strengthened by production of these facts. The task of proving the unconstitutionality of a statute may be aided by a factual foundation established in the record by an evidentiary hearing or otherwise. *Pinnick* v. *Cleary,* 360 Mass. 1, 32-38 (1971) (concurring opinion of Tauro, C.J.). *Colella* v. *State Racing Commn.* 360 Mass. 152, 156 (1971). *Mobil Oil Corp.* v. *Attorney Gen.* 361 Mass. 401, 419-420 (1972) (dissenting opinion of Hennessey, J.). We do not decide matters of constitutional moment in a vacuum and had the defendant argued these exceptions we would have given them due regard. See generally, Karst, Legislative Facts in Constitutional Litigation, 1960 Sup. Ct. Rev. 75; Alfange, The Relevance of Legislative Facts in Constitutional Law 114 U. of Pa. L. Rev. 637 (1966). However, these exceptions were not argued in its brief and in accordance with the practice of this court they are deemed waived. *Commonwealth* v. *Ellis,* 356 Mass. 574, 575 (1970).

*Co.* v. *Director of the Div. on the Necessaries of Life,* 319
Mass. 301, 306 (1946). *Pinnick* v. *Cleary, supra.* Further-
more, it has been our frequently stated rule that a statutory
classification will not be set aside as a denial of equal
protection or due process if any state of facts reasonably
may be conceived to justify it. *McQuade* v. *New York Cent.
R.R.* 320 Mass. 35 (1946). *Colella* v. *State Racing Commn.*
360 Mass. 152 (1971).

The defendant argues that the standard of review
articulated above is inappropriate to the facts of this case in
that G. L. c. 149, § 129B, infringes on its right to pursue its
lawful business, a right which it deems fundamental.
Having postulated the right to work as fundamental, the
defendant asserts that the State must demonstrate that
§ 129B serves a compelling State interest.

The scrutiny with which this court will review a statute
infringing on fundamental rights is, of course, much
stricter than the judicial review which requires only that a
statute not be arbitrary or capricious. Where a fundamen-
tal right is at issue, the State must show that the statute is
necessary to promote a compelling governmental interest.
*Sherbert* v. *Verner,* 374 U. S. 398, 402-409 (1963). *Shapiro*
v. *Thompson,* 394 U. S. 618, 634 (1969). And in certain
circumstances, arguably involving constitutionally pro-
tected liberties, we have required that the asserted govern-
mental interests be sufficient to outweigh exercise of the
individual right. *Selectmen of Framingham* v. *Civil Serv.
Commn., post,* 547 (1974). However, neither the United
States Supreme Court nor this court has ever held that the
right to work or to pursue one's business is a fundamental
right infringement of which deserves strict judicial scruti-
ny. Accordingly our standard of review in considering the
validity of restrictions on the manner of pursuing one's
business is whether the statute has a rational tendency to
promote the safety, health, morals or general welfare of the
public. *McMurdo* v. *Getter,* 298 Mass. 363, 366 (1937).
*Slome* v. *Chief of Police of Fitchburg,* 304 Mass. 187, 190
(1939). *Commonwealth* v. *Finnigan,* 326 Mass. 378, 379
(1950). *Milligan* v. *Board of Registration in Pharmacy,* 348

Mass. 491, 497 (1965). *Mobil Oil Corp.* v. *Attorney Gen.* 361 Mass. 401, 412-413 (1972). *Jewel Cos. Inc.* v. *Burlington,* 365 Mass. 274, 278 (1974).

Applying these standards, we conclude that § 129B is a valid exercise of the legislative authority and is constitutional in that it satisfies both the equal protection and due process clauses of our Federal Constitution as well as the parallel requirements of our State Constitution.

With respect to the due process challenge, the defendant argues that the statute is not related to the public health, safety, morals or general welfare. Further, the defendant contends that § 129B arbitrarily interferes with its right to conduct its business and carry on a lawful trade, and is therefore violative of due process. The claim is that stilts are less dangerous than other methods of elevation which are permitted[5] and therefore, the defendant asserts, it is irrational to ban their use.

Our consideration of the substantive merits of a legislative enactment is guided by the well settled principle that a law in order to meet the guaranties of due process must not be unreasonable or arbitrary and the means selected must have a real and substantial relation to the object sought to be attained. *Howes Bros. Co.* v. *Unemployment Compensation Commn.* 296 Mass. 275, 287 (1936), cert. den. 300 U. S. 657 (1936). *F. S. Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 415 (1920). *Pinnick* v. *Cleary,* 360 Mass. 1, 13-16 (1971). As was early recognized, "neither property rights nor contract rights are absolute; for government cannot exist if the citizen may at will use his property to the detriment of his fellows or exercise his freedom of contract to work them harm. Equally fundamental with the private right is that of the public to regulate it in the common interest." *Nebbia* v. *New York,* 291 U. S. 502, 523 (1934).

---

[5] As we noted earlier, the defendant's proffered evidence on the relative safety of stilts was excluded. See fn. 4, *supra.* In the absence of some factual foundation of record establishing the lack of any conceivable basis for the legislation we, unless the statute is patently offensive, will defer to the legislative finding of facts. *Opinion of the Justices,* 337 Mass. 796 (1958). Cf. *Pinnick* v. *Cleary,* 360 Mass. 1, 32 (1971) (concurring opinion of Tauro, C.J.); *Mobil Oil Corp.* v. *Attorney Gen.* 361 Mass. 401, 419 (1972) (dissenting opinion of Hennessey, J.).

The Fourteenth Amendment in the context of economic legislation proscribes the exercise of this governmental power to regulate for the public welfare only to the extent that an enactment is in manifest excess of legislative power. *Commonwealth* v. *Finnigan,* 326 Mass. 378, 379 (1950). We recognize, of course, the importance of the right to pursue one's trade or business. That right, however, is not unqualified and, in certain circumstances, must yield to regulations designed to promote the public safety, health, morals and general welfare. *McMurdo* v. *Getter,* 298 Mass. 363, 366 (1937). *Commonwealth* v. *Finnigan, supra.* Our function is to ensure that no regulation unreasonably interferes with the pursuit of a trade or business. *Merit Oil Co.* v. *Director of the Div. on the Necessaries of Life,* 319 Mass. 301 (1946). *Jewel Cos. Inc.* v. *Burlington,* 365 Mass. 274 (1974). It is not our function to consider the expediency of an enactment or the wisdom of its provisions. *Howes Bros. Co.* v. *Unemployment Compensation Commn.* 296 Mass. 275 (1936). *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health,* 348 Mass. 414, 422-423 (1965), and cases cited therein. *Mobil Oil Corp.* v. *Attorney Gen.* 361 Mass. 401, 412-413 (1972).

We cannot on the basis of this record say that this regulation constitutes such an unreasonable interference. The Legislature may have concluded with substantial cause that the use of stilts in construction work endangered workers. Moreover; it is not irrational to conclude that the use of stilts may adversely affect the quality of the end product. These conceivable bases for the enactment of § 129B are not groundless.

The defendant assails G. L. c. 149, § 129B, on equal protection grounds from two fronts. First, the defendant argues that § 129B is unconstitutional in that it prohibits the use of stilts by employees engaged in construction work while permitting the use of stilts in other nonconstruction trades and occupations. Second, it argues that the statute is arbitrary in that it discriminates against the person with employees engaged in construction work by prohibiting the employer from requiring or permitting his employees the

use of stilts while allowing the self-employed individual the benefit of their use.[6] Contrary to the defendant's arguments, we do not find these classifications lacking in reason.

We have consistently held that a legislative difference in treatment reasonably related to a legitimate public purpose is permissible. *McQuade* v. *New York Cent. R.R.* 320 Mass. 35, 38-39 (1946). *Maher* v. *Brookline,* 339 Mass. 209 (1959). *Pinnick* v. *Cleary,* 360 Mass. 1 (1971). *Mobil Oil Corp.* v. *Attorney Gen.* 361 Mass. 401 (1972). See *Williamson* v. *Lee Optical of Okla. Inc.* 348 U. S. 483 (1955). *Morey* v. *Doud,* 354 U. S. 457 (1957). The equal protection clause in the context of economic legislation limits legislative discretion only to the extent of forbidding arbitrary or irrational classifications. *Opinion of the Justices,* 251 Mass. 569, 601 (1925). *Railway Exp. Agency, Inc.* v. *New York,* 336 U. S. 106 (1949). We, as a judicial body, may not substitute our independent judgment for that of the Legislature in areas of practical administration which may justify, even require, rough accommodations that to some extent result in dissimilarity of treatment. *Lindsley* v. *Natural Carbonic Gas Co.* 220 U. S. 61 (1911).

The Legislature may determine that a regulation valid for one sort of business or in certain circumstances is inappropriate for another manner of business. Where the question is debatable our inquiry is not with the accuracy of the legislative determination but only with the question whether it so lacks any reasonable basis as to be arbitrary.

---

[6] Both the Commonwealth and the defendant apparently assume that § 129B does not apply to self-employed individuals and we proceed on that assumption. Evidence that § 129B does, in fact, not apply to self-employed individuals is found in the amendments to the act. The original Senate version of the bill (1964 Senate Doc. No. 213) was entitled, "An Act to make illegal in construction work the use of so-called 'stilts' commonly known as devices attached to the legs and feet of construction workers to elevate them to high placed or positioned work," and provided that the use of stilts, either voluntary or required, shall be illegal and is prohibited in construction work. A substitute bill, 1964 Senate Doc. No. 698, entitled, "An Act prohibiting certain employers from requiring or knowingly permitting employees to use devices, commonly known as stilts, in the performance of their work," provided, in pertinent part: "Whoever, being engaged in construction work, requires or knowingly permits any person *employed by him* in construction work to use . . . [stilts] shall be punished by a fine" (emphasis added).

While the Legislature has not expressly defined its purposes in enacting G. L. c. 149, § 129B, we are not required to blind ourselves to possible rationales that may have influenced the Legislature. *Marshal House, Inc.* v. *Rent Control Bd. of Brookline,* 358 Mass. 686, 695 (1971). *Pinnick* v. *Cleary, supra,* at 16-21.

It is obvious that working conditions in the construction industry differ substantially from those existing in other industries. The Legislature may have determined that construction workers use materials and processes that increase the risk of injury that the use of stilts engenders. Evils in one field may be of different dimension and proportion requiring in the Legislature's judgment different remedies. *American Fedn. of Labor* v. *American Sash & Door Co.* 335 U. S. 538, 542 (1949). It is not for us to dispute this judgment.

· Nor is it necessary for us to speculate as to possible legislative reasoning specially concerned with the construction industry. It may be that G. L. c. 149, § 129B, was designed to attack merely one phase of a problem. Such a legislative approach would be constitutionally valid: "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. . . . The legislature may select one phase of one field and apply a remedy there, neglecting the others." *Williamson* v. *Lee Optical of Okla. Inc.* 348 U. S. 483, 489 (1955).

The second classification challenged here, that between employers and self-employed persons, is also, in our view, a rational one. The Legislature may have reasoned that a self-employed person may exercise a judgment as to whether to use stilts free from the compulsion that an employee who fears loss of his job feels. A legislative classification which takes account of such distinctions is not irrational.

The justifications for prohibiting the use of stilts in construction work while allowing their use in other industries and prohibiting employers from requiring their use are certainly as strong as were the bases for the classifications upheld in *McQuade* v. *New York Cent. R.R.* 320

Mass. 35 (1946) (railroads, and not other transportation lines, required to furnish uniforms for passenger and baggage workers), *Maher* v. *Brookline,* 339 Mass. 209 (1959) (fire regulations applicable only to lodging houses), *Mobil Oil Corp.* v. *Attorney Gen.* 361 Mass. 401 (1972) (gasoline dealers prohibited from giving chances or offering prizes in promotional programs), and *Jewel Cos. Inc.* v. *Burlington,* 365 Mass. 274 (1974) (certain retail stores required to remain closed between 10 P.M. and 8 A.M.).

On these facts, we cannot say that G. L. c. 149, § 129B, imposes a classification that is arbitrary and lacking in reason. Thus, we conclude that the statute does not violate the equal protection clauses of the State and Federal Constitutions.

Accordingly we hold that G. L. c. 149, § 129B, violates neither the due process nor equal protection guaranties of our State and Federal Constitutions.

*Judgment affirmed.*