Consolidated Cigar Corp. *v.* Department of Public Health.

CONSOLIDATED CIGAR CORPORATION *vs.* DEPARTMENT OF
PUBLIC HEALTH.

Hampden.    March 10, 1977. — June 28, 1977.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Public Health. Regulation. Constitutional Law,* Equal protection of
laws, Police power. *Due Process of Law. Practice, Civil,* Summary
judgment, Declaratory relief. *Migrant Workers.*

Regulations promulgated by the Department of Public Health pursuant
to G. L. c. 111, § 128H, with respect to visitation rights of migrant
workers, were applicable to young persons employed by a tobacco
company during school vacations and housed in facilities furnished
by the employer. [847-850]
Neither the provisions of G. L. c. 111, § 128H, nor certain regulations
concerning visitation rights of migrant farm workers promulgated
pursuant to the statute are unconstitutional. [850-854]
Regulations promulgated by the Department of Public Health pursuant
to G. L. c. 111, § 128H, were within the scope of the department's
delegated authority. [854-858]

CIVIL ACTION commenced in the Superior Court on April
9, 1975.

The case was heard by *Moriarty, J.,* on motions for
summary judgment.

The Supreme Judicial Court granted a request for di-
rect appellate review.

*James L. Allen* for the plaintiff.

*Jonathan Brant,* Assistant Attorney General, for the
defendant.

*Kenneth A. Cohen, Alan Jay Rom, John Reinstein, &
Sydney T. Schulman,* for Civil Liberties Union of Massa-
chusetts & others, amici curiae, submitted a brief.

ABRAMS, J.   The plaintiff, Consolidated Cigar Corpora-
tion (Consolidated), sought a judgment declaring that
G. L. c. 111, § 128H,[1] and the Regulations on Rights of

---

[1] General Laws c. 111, § 128H, as amended by St. 1971, c. 373, reads
as follows: "The department of public health shall, as a part of its in-

Visitation for Migrant Workers (regulations) promulgated by the Department of Public Health (department) pursuant to the statutory mandate are unconstitutional on their face and as applied to Consolidated. It further sought a declaration that the statute and regulations are inapplicable to its tobacco harvesting facilities. The department filed a counterclaim for injunctive relief. Both parties moved for summary judgment. A judge of the Superior Court declared the rights of the parties in his order for judgment. G. L. c. 231A, § 1. See *Attorney Gen.* v. *Kenco Optics, Inc.*, 369 Mass. 412, 418 (1976). The judgment enjoined Consolidated from further violations of the regulations. We granted an application for direct appellate review.

As a procedural matter, we think resort to declaratory relief particularly appropriate here. See G. L. c. 231A, § 2.[2] To require the statute and the regulations to be challenged only in an enforcement proceeding would delay the vindication of rights belonging to the public and to a group classified by the Legislature as requiring special protection. Cf. *Norcisa* v. *Selectmen of Provincetown*, 368 Mass. 161 (1975).

---

spection of a site for a farm labor camp, determine what educational and recreational opportunities may be available for migrant workers, and shall, as far as is practical, encourage the development of such opportunities in cooperation with local and state agencies. The department shall protect the right of the migrant worker to enter and leave the premises of the employer during the period of his employment, and shall include in its certificate of occupancy a notification to the worker that such right exists, notwithstanding any contract provision to the contrary. A worker living in quarters apart from the living quarters of his employer shall have reasonable rights of visitation in his living quarters outside of regular working hours and the certificate of occupancy issued by the department shall include notification, in English and in Spanish, of said rights. The department shall establish, by promulgation of regulations, such minimum standards relating to the rights of visitation under this section as will ensure the adequate protection of said rights. The superior court shall have jurisdiction in equity upon petition brought by the department in the name of the commonwealth to restrain and enjoin violations of this, or of section one hundred and twenty-eight G, or regulations promulgated thereunder."

[2] Consolidated filed the requisite affidavit declaring that "reliance upon administrative relief would be futile." G. L. c. 231A, § 3.

Consolidated Cigar Corp. *v.* Department of Public Health.

We also think it appropriate to note that the motions for summary judgment and the accompanying affidavits were well prepared, thus enabling the trial judge to determine accurately that there was no genuine issue of material fact to be tried. The effective and proper use of Mass. R. Civ. P. 56, 365 Mass. 824 (1974), in this case has eliminated an unnecessary trial, and has resulted in a more prompt disposition of this matter than would otherwise have been obtained.

The pertinent facts, accurately and artfully recounted in the Superior Court judge's order for judgment, are as follows.

Consolidated plants, harvests, and processes shade-grown tobacco in the Connecticut River Valley area, including parts of Massachusetts. Consolidated employs a number of young persons (ages fourteen to seventeen) during their school vacations under a special summer work program. These young persons are housed in facilities furnished by Consolidated and supervised by teachers or principals recruited by Consolidated from the home areas of the young workers. Consolidated obtains signed employment contracts from the parents or guardians of these young people.

The contracts drafted by Consolidated purport to regulate the nonworking activities of its young workers, as well as access by visitors to the housing facilities. Guests must obtain administrative approval from Consolidated in order to visit the young employees. Exceptions are made only for public agencies rendering emergency aid, medical personnel employed by Consolidated, and teachers sent by the Migrant Resource Center of the Massachusetts Department of Education.

Consolidated invoked this contractual provision in 1974 and 1975 to deny access to certain persons seeking to enter its young person facilities. Among persons barred from entry were a paralegal employee of Neighborhood Legal Services, Inc., of Hartford, Connecticut, and a chaplain affiliated with the Springfield Council of Churches and

some of their supporting personnel. Consolidated sought judicial relief between the 1974 and the 1975 harvesting seasons.

The major dispute before us centers on the right of persons housed in the young person facilities to receive visitors.[3] Consolidated claims that the statute and the regulations are inapplicable to it for the reasons (1) that the young persons whom they employ during the school vacations are not "migrant farm workers"; (2) that the statute and regulations are unconstitutional; and (3) that the regulations, even if constitutional, exceed the scope of the enabling statute. We disagree.

1. *Applicability of the regulations to Consolidated's young person facilities.* The department is obligated to inspect annually "all farm labor camps as defined in the state sanitary code...." G. L. c. 111, § 128G, inserted by St. 1967, c. 718, § 5. Pursuant to G. L. c. 111, § 127A, the department promulgated regulations which define farm labor camps as: "[A]ny tract of land, including all buildings, vehicles, and other structures located thereon, any part of which contains sleeping facilities made available in connection with the employment of laborers in farm activities and living apart from the operator's household and which are occupied or intended for occupancy by two or more such laborers ... and for whom the facilities are provided in connection with their employment." State Sanitary Code, art. III, regulation 1.1.

The Legislature recognized that a migrant worker at such farm labor camps shall "have reasonable rights of visitation in his living quarters outside of regular working hours," and authorized the department to promulgate regulations setting forth "such minimum standards relating to the rights of visitation ... as will ensure the adequate protection of said rights." G. L. c. 111, § 128H.

---

[3] Consolidated also has adult workers. Since it places few if any visitation restrictions on the adults, the discussion of visitation issues by us relates primarily to the younger workers, although applicable to all migrant workers.

Consolidated Cigar Corp. *v.* Department of Public Health.

In accordance with this legislative mandate, the regulations were promulgated.[4]

---

[4] The Regulations on Rights of Visitation for Migrant Workers, 13 Code of Mass. Regs. 825-828 (1971), read in pertinent part:
"1. *Definitions*
. . . .
"C. 'Visitor' shall mean any individual or group of individuals seeking to enter a farm labor camp for the purpose of contacting or communicating with one or more workers.

. . . .
"2. *Reasonable Rights of Visitation*
"Workers living in quarters apart from the living quarters of the operator shall be entitled to receive visitors outside of regular working hours.
"A. Visiting hours on working days will begin after working hours or at 6:00 p.m., whichever is the earliest, and end no earlier than four (4) hours after the end of the working day or at 10:30 p.m., whichever is the latest. On non-working days visiting hours will be in effect from at least 10:00 a.m. to 10:30 p.m. . . .
"B. The limitation on hours in subsection A shall *not* apply to the organizations, their agents, employees or representatives listed herein:
"(i) Federal, State, local or other governmental agencies, departments or boards;
"(ii) Physicians, dentists, and other medical or para-medical personnel;
"(iii) Priests, ministers, rabbis;
"(iv) Agencies or organizations which are funded in whole or part by governmental funds;
"(v) Recognized charitable and social agencies;
"(vi) Members of the press [emphasis added].
"C. A worker may terminate a visitation with regard to himself only. Such termination must be orally communicated to the visitor by the worker himself, and no operator may deny a visitor access to a worker prior to such communication. *Such termination shall not apply to the Department* [emphasis added].

. . . .
"4. *Visitor Rights*
"A. In order for an individual or group of individuals to be regarded as a visitor, it is *not* required:
"(i) That the worker or workers initiate the request for the visit.
"(ii) That the visitor secure approval of the farm labor camp operator.
"B. An operator may ask a visitor for reasonable identification *but shall not deny access on this basis* [emphasis added].

. . . .
"7. *Salesmen*
"An operator may deny salesmen access to a farm labor camp, provided that:
"A. he gains no commercial advantage, directly or indirectly, thereby; or
"B. the salesman in question is not the only source of the product or service offered reasonably available to the workers."

Consolidated Cigar Corp. *v.* Department of Public Health.

Consolidated urges that its youthful employees are not "migrant workers" within the meaning of § 128H, because the term connotes agricultural laborers who "follow the crops."[5] It seeks to buttress this argument by reference to the United States House of Representatives report which accompanies Federal legislation now codified at 42 U.S.C. § 2861 (1970) et seq. The report defines a "migrant agricultural employee" as a worker "(a) whose primary employment is in agriculture ... and (b) who establishes with his family ... a temporary residence." H.R. Rep. No. 1458, 88th Cong., 2d Sess., reprinted in [1964] U.S. Code Cong. & Ad. News 2900, 2924.

Initially, we note that we are not bound by the definition of the term which other jurisdictions have embraced where the meaning of the legislative enactment is clear from the text of the statute.[6] Such is the case with G. L. c. 111, §§ 128G and 128H. There is no doubt that Consolidated's facilities are "farm labor camps" within the meaning of the State Sanitary Code. Further, it is readily apparent that "migrant workers" are those workers who are employed to perform farm labor and are housed in farm labor camps. The Legislature has sought to insulate farm workers from potential exploitation *while they are housed* in farm labor camps; to condition such protection on the individual's activities before or after his term of employment in such a setting would be to frustrate the intent of the Legislature.[7]

---

[5] In practice, Consolidated grants access to teachers sent by the Migrant Resource Center of the Massachusetts Department of Education. At least for this limited purpose, Consolidated apparently permitted its employees to be classified as migrant workers.

[6] This argument is eviscerated by the fact that the definition relied on by Consolidated is not even the sole description of the term within the Federal system. Another definition, entitled to no less weight than that cited by Consolidated, is: a "seasonal farmworker who performs or has performed during the preceding twelve months agricultural labor which requires travel such that the worker is unable to return to his/her domicile (accepted place of residence) within the same day." 42 Fed. Reg. 1659 (1977) (to be codified in 29 C.F.R. § 97.203).

[7] Consolidated urges that the legislation was invalidated by the United States Supreme Court in *Hudgens* v. *NLRB,* 424 U.S. 507 (1976). While that case did hold that labor organizers had no First Amend-

Because the corporation either owns or leases the facilities in which its employees are housed, Consolidated claims that those workers are not "living in quarters apart from the living quarters of [their] employer," G. L. c. 111, § 128H, and, therefore, the Connecticut River Valley operations are exempt from the statutes and regulations. We do not agree. This exempting clause is a simple concession to the fact that farm operators who house their employees in their own homes stand on a different footing in regard to visitation rights from those operators who own, operate, or lease housing facilities, but do not reside therein. Neither the fact of ownership of the facility nor the presence of the corporation's agent in the dormitory is a relevant factor in triggering this exempting clause.

The department has interpreted "living in quarters apart from the living quarters of [their] employer[s]" (§ 128H), as meaning "living apart from the operator's household." State Sanitary Code, art. III, regulation 1.1. The importance of an administrative interpretation of a statute is "never greater than where, as here, an agency must interpret a legislative policy which is only broadly set out in the governing statute." *School Comm. of Springfield* v. *Board of Educ.*, 362 Mass. 417, 442 (1972), citing *Cleary* v. *Cardullo's, Inc.*, 347 Mass. 337, 343-344 (1964). Adopting the administrative construction of this statutory phrase, we conclude that the exempting clause pertains only to the situation where the farm operator houses his employees in his own home.

2. *Constitutionality.*

The parties have argued extensively on the constitutionality of the statute and the regulations, but their arguments were limited to the applicability of the "com-

---

ment right of access to a shopping center, the decision was based on (1) the Court's refusal to apply the doctrine of the "company town," see *Marsh* v. *Alabama,* 326 U.S. 501 (1946), and (2) the specific terms of the National Labor Relations Act, 29 U.S.C. § 151 (1970) et seq. Since reliance on neither the "company town" doctrine nor the National Labor Relations Act is necessary to the decision today, we find *Hudgens* wholly inapplicable.

pany town" doctrine. See *Marsh* v. *Alabama, supra.* Cf. *Hudgens* v. *NLRB, supra.* While it is clear that Consolidated has "business and property for which ... [it can] claim protection," *Pierce* v. *Society of Sisters,* 268 U.S. 510, 535 (1925),[8] it is, in our view, the reasonableness of the statute and the regulations promulgated pursuant to the statute which should be the focal point of our constitutional inquiry. The Legislature has spoken. Its acts are presumed constitutional. *Commonwealth* v. *Henry's Drywall Co.,* 366 Mass. 539 (1974). Consolidated bears the heavy burden of showing an invalid exercise of legislative power or an impermissible infringement of its property rights. We believe it has not met its burden.

Consolidated urges that the regulations deprive it of property rights. However, the enjoyment of private property may be subordinated to reasonable regulations that are essential to the peace, safety, and welfare of the community. *Durgin* v. *Minot,* 203 Mass. 26, 28 (1909). In order for a limited incursion to survive constitutional attack, it must satisfy two requirements. First, the apparent objective of the legislation must be rationally related to the promotion of the public safety, health, morals or general welfare. *Opinion of the Justices,* 368 Mass. 857, 861 (1975). *Mobil Oil Corp.* v. *Attorney Gen.,* 361 Mass. 401, 413 (1972). *Goldblatt* v. *Hempstead,* 369 U.S. 590, 594 (1962). Second, the means chosen to effectuate the legislative purpose must be reasonable. *Commonwealth* v. *Henry's Drywall Co., supra* at 543. *Williamson* v. *Lee Optical of Okla., Inc.,* 348 U.S. 483, 487-488 (1955). The wisdom of the particular remedial legislation is not for us to judge. *Druzik* v. *Board of Health of Haverhill,* 324 Mass. 129, 138-139 (1949).

Sections 128G and 128H were added originally to G. L. c. 111 by St. 1967, c. 718, §§ 5 and 5A, respectively, ostensibly in response to a report on migratory labor commissioned by the Legislative Research Council. See 1967

---

[8] See *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230, 251 (1946).

Senate Doc. No. 1303 at 14-53. We may consider this report for any light it might shed on the resulting legislation. See *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.,* 330 Mass. 422, 429 (1953). The report recognized that the earnings of migrant workers were among the lowest in our economy and that such workers were excluded from many social advances available to other segments of the working population, including minimum wage rates, adequate child labor protection, unemployment insurance, full workmen's compensation, social security coverage, and collective bargaining. It further noted their special problems in the areas of housing, sanitation, transportation, education, and health services, and observed that migrant workers lack cohesiveness with the community into which they have temporarily settled. The Legislative Research Council concluded that "in the absence of federal or state protections or coordinated programs," the migrant worker "seems destined to a continual life of poverty and deprivation." 1967 Senate Doc. No. 1303 at 15.

Seeking, as it does, to protect this class of persons from the above mentioned conditions, the legislation bears an obvious rational relationship to the promotion of the public health and welfare. See *Mobil Oil Corp.* v. *Attorney Gen., supra.*

Next, we must determine whether the means selected to effectuate the purpose of the legislation "are reasonably necessary for the accomplishment of the purpose." *Goldblatt* v. *Hempstead, supra* at 595, quoting from *Lawton* v. *Steele,* 152 U.S. 133, 137 (1894). Statute 1967, c. 718, established a minimum wage for farm workers, encouraged the development of recreational and educational opportunities for such workers, and recognized their rights of free ingress to and egress from the premises of their employers, as well as rights of visitation.[9]

---

[9] Section 128H was amended (effective June 3, 1971) by St. 1971, c. 373, entitled "An Act further regulating the visitation rights of migrant workers living in quarters apart from the living quarters of their employer."

For purposes of the instant case, we need consider only one aspect of this remedial legislation — the provision which controls the access of visitors. At the very least, such access provides a means to alleviate the isolation that the farmworkers necessarily experience. See Sherman & Levy, Free Access to Migrant Labor Camps, 57 A.B.A.J. 434, 435 (1971). Further, it helps supply necessary supportive services which the workers would otherwise have to seek in the surrounding community or else forgo. "When he seeks help, the migrant has neither the time, the money nor the transportation to leave the grower's fields or the confines of the residential camp to find assistance." *Id.* at 434. Other courts have recognized the right of access as a necessary concomitant of the right to organize. See e.g., *Agricultural Labor Relations Bd.* v. *Superior Court*, 16 Cal. 3d 392, appeal dismissed for want of substantial Federal question sub nom. *Kubo* v. *Agricultural Labor Relations Bd.*, 429 U.S. 802 (1976). Finally, access for attorneys and paralegal persons serves as a means of assuring that the migrant workers are informed of their statutory and constitutional rights. See generally, Spriggs, Access of Visitors to Labor Camps on Privately Owned Property, 21 U. Fla. L. Rev. 295 (1969).[10] We conclude that access as guaranteed by the statute and the regulations is a reasonable means to attain the goals set by the Legislature to regulate reasonably the working and living conditions of migrant workers.

Consolidated argues, alternatively, that the access regulation is so broad that it permits access for those whose presence in the camp would in no way aid in achieving the ultimate legislative goal, thus needlessly encroaching on its property rights. As we have already stated, our role is not to evaluate the wisdom of any particular statute or regulation. *Druzik* v. *Board of Health of Haverhill*, 324 Mass. 129, 138-139 (1949). Nor is this a situation wherein the administrative body need find the "least restrictive" regulation. Cf. *Commonwealth* v. *Leis*, 355 Mass. 189, 195-

---

[10] We note that one of the persons excluded from the labor camps was seeking to distribute a booklet entitled "Know Your Rights."

196 (1969), and cases cited. Moreover, Consolidated has failed to present, as it is required to do, any factual basis in the record which would demonstrate the constitutional overbreadth of the statute or any of the regulations. See *Colella* v. *State Racing Comm'n,* 360 Mass. 152, 156 (1971). We therefore hold that G. L. c. 111, §§ 128G and 128H, and their accompanying regulations, are a valid exercise of the police power, and that they do not offend against the due process clause.

Finally, the appellant urges that the statute which seeks to regulate only farm labor camps violates its rights to the equal protection of the laws in derogation of both the United States Constitution and art. 1 of the Declaration of Rights of the Constitution of the Commonwealth. It claims that other types of temporary housing facilities are not similarly regulated. We think it a major difference, however, that Consolidated stands in an employer-employee relationship with those in its facilities. Thus, the classification rests on "some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced [are] treated alike." *F.S. Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415 (1920). *First Nat'l Bank* v. *Attorney Gen.,* 371 Mass. 773 (1977). Moreover, "[w]hen legislative authority is exerted within a proper area, it need not embrace every conceivable problem within that field. The Legislature may proceed one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Mobil Oil Corp.* v. *Attorney Gen.,* 361 Mass. 401, 417 (1972). We find that a rational basis exists for the classification and therefore Consolidated's equal protection claim fails. See *Commonwealth* v. *Henry's Drywall Co.,* 366 Mass. 539, 545 (1974); *San Antonio Independent School Dist.* v. *Rodriguez,* 411 U.S. 1 (1973).

3. *Validity of the regulations.* Consolidated next mounts a frontal attack on the facial validity of the visitation regulations promulgated pursuant to § 128H. While the statute recognizes the rights of farmworkers to receive visitors, the regulations authorized by the statute

speak in terms of the rights of visitors to gain access to those residing within the farm labor camps. Even where no individual employee invites the particular visitor, the visitor's access is guaranteed. This, the appellant argues, is an administrative venture beyond the scope of the delegated authority.

We note that where litigation focuses on the power of an administrative agency to act as the department did, the controversy is "especially susceptible of resolution by a declaratory decree." *Boston Ins. Co.* v. *Fawcett*, 357 Mass. 535, 537 (1970). *Ciszewski* v. *Industrial Accident Bd.*, 367 Mass. 135, 139 (1975). In addition, we are mindful that the regulations arguably do lend themselves to the construction urged by Consolidated. However, we are bound to test the regulations by the same standard which would apply to a statute. Thus, we must apply all rational presumptions in favor of the validity of the administrative action and not declare it void unless its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate. *Colella* v. *State Racing Comm'n, supra* at 156-157. *Perkins* v. *Westwood*, 226 Mass. 268 (1917).

The purpose of § 128H, as declared in its title, is to "further [regulate] the visitation rights of migrant workers living in quarters apart from the living quarters of their employer." St. 1971, c. 373. In accordance with this stated objective, the department was vested with broad authority to effectuate the purposes of the act. In such a situation, "the validity of a regulation promulgated thereunder will be sustained so long as it is 'reasonably related to the purposes of the enabling legislation.' " *Mourning* v. *Family Publications Serv. Inc.*, 411 U.S. 356, 369 (1973), quoting from *Thorpe* v. *Housing Auth. of Durham*, 393 U.S. 268, 280-281 (1969).

Aware that the Legislature has recognized the necessity of administrative flexibility to prevent the abuses which the act seeks to remedy, we conclude that the regulations are valid.

The regulations create two general classes of people who

might seek entry to farm labor camps: visitors, reg. 2 A, and those affiliated with one of six specifically enumerated public agencies or service organizations who seek access in their official capacities, reg. 2 B. See note 4 *supra.* The "visitors" class includes those who, although within one of the six categories, seek admission in nonofficial capacities.

Certain restrictions are placed by the regulations on those who are classified as visitors. First, their access is limited to specific time periods. Reg. 2 A. Second, if the operator so desires, he may "ask a visitor for reasonable identification but shall not deny access on this basis." Reg. 4 B. We read this latter provision as requiring that this visitor (1) identify himself and (2) state in general terms the purpose of his visit. However, the operator may not require the general visitor to furnish him with a specific form of identification, nor may he unreasonably deny access on the basis of the visitor's stated purpose. In addition, such visitor need not, in order to gain admission, demonstrate that he or she was invited by a particular employee or that he or she obtained advance approval from the operator for the particular visit.[11] At the time of the visitor's arrival at the facility, the operator may inquire only as to the general nature of the visit in order to determine that it is not illegal.[12]

The department has recognized that an individual employee may have the right to decline visitation in a specific

---

[11] "4. *Visitor Rights*
"A. ... [I]t is not required:
"(i)  That the worker or workers initiate the request for the visit.
"(ii)  That the visitor secure approval of the farm labor camp operator."

[12] Arguably, the paralegal employee of Neighborhood Legal Services, Inc., of Hartford, Connecticut, who sought admission in order to distribute a handbook entitled "Know Your Rights" could qualify for the special status of reg. 2 B (iv) as a representative of an agency "funded in whole or in part by governmental funds." However, we believe that attorneys and paralegal persons are merely visitors, and are therefore subject to the regulatory provisions of reg. 2 A. The record is devoid of any evidence showing that their attempted entry violated any part of the department's regulations.

instance. To prevent abuse of this right, the department requires oral communication of this desire from the employee to the visitor. Reg. 2 C, note 4 *supra.* In addition, the agency realized that the power to terminate could be misused; absent a provision to the contrary, the operator could enlist the aid of one or several employees to block access to the entire population by the mere exercise of the veto right. Thus, reg. 2 C states: "A worker may terminate a visitation with regard to himself only."

So construed, the regulations strike a balance between the operator's contractual obligation to ensure the welfare of the employees, and the young farmworkers' statutorily recognized right to receive visitors.

On the other hand, those specifically enumerated in reg. 2 B are not "visitors," and their access is not restricted by the provisions which affect the admission of those who are properly characterized as visitors. The department has recognized that persons within these categories serve the welfare of the farm labor camp populace as a whole and, therefore, broader access is guaranteed them. Accordingly, such persons face a heavier burden of identification. They must (1) identify themselves; (2) demonstrate that they indeed fall within one of these special classes; and (3) show that they seek admission in their official capacities. Once the individual has complied with these threshold requirements, his or her access cannot be denied.

Consolidated argues that this regulation underscores the department's encroachment into areas beyond the authority delegated to it, for G. L. c. 111, § 128H, states only that "[a] worker ... shall have reasonable rights of visitation in his living quarters *outside of regular working hours*" (emphasis added). However, as we have stated, persons within this classification are not properly characterized as visitors. Instead, they provide necessary services such as medical care or spiritual guidance or they ensure the operator's compliance with various statutory and administrative requirements. Regulation 2 B operates as an exemption from the provisions of reg. 2 A. The department

is also empowered to inspect farm labor camps, to involve local and State agencies in the development of recreational and educational opportunities for these workers, and to inform farm workers of their rights. G. L. c. 111, § 128H. The access provision is aimed at effectuating these legislative purposes and does not exceed the powers delegated to the department.

We hold that those who provide necessary services may not be barred by application of the time restrictions which pertain to visitors. We do think, however, that the requirement of reasonableness which applies expressly to workers' rights to receive visitors applies to those providing necessary services as well.

Because the record contains no evidence of any person from this class having been refused admission, we need not surmise as to the outer limits of reasonable access. Nor are we confronted with a situation wherein a worker declined to visit with such a person. We leave for another day the question whether some aspect of the department's actions goes beyond the contours of the statute's delegation. We hold that, on the facts before us, the regulations are reasonably related to the purposes of the enabling legislation, *Mourning* v. *Family Publications Serv., Inc., supra,* and therefore they are valid. Nevertheless, factual situations "may show up particular features of the regulations in a new light and in that event we shall not be foreclosed from reconsidering the views here expressed." *Cambridge Elec. Light Co.* v. *Department of Pub. Utils.,* 363 Mass. 474, 493 (1973).

The judgment of the Superior Court as it declares the rights of the parties and grants injunctive relief is affirmed.

*So ordered.*