TAUNTON GREYHOUND ASSOCIATION, INC. *vs.*
TOWN OF DIGHTON.

Bristol.    May 4, 1977. — July 11, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Constitutional Law,* Police power. *Municipal Corporations,* By-laws and ordinances. *Racing.*

A town by-law requiring the operator of a dog racing track to hire town police officers each racing night in the ratio of one officer to each 400 persons expected to be in attendance and to compensate the

officers at the prevailing extra duty rate was not unconstitutional nor was it inconsistent with the powers of the State Racing Commission under G. L. c. 128A, § 8. [62-64]

CIVIL ACTION commenced in the Superior Court on July 11, 1974.

The case was heard by *Kent B. Smith, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*William I. Cowin (Ronald H. Rappaport* with him) for the plaintiff.

*David T. Gay,* Town Counsel, for the defendant.

KAPLAN, J. The plaintiff Taunton Greyhound Association, Inc., owner and, as licensee of the State Racing Commission, the operator of a dog racing track located partly in the town of Dighton, sought a declaration of the unconstitutionality of a town by-law and injunctive relief against its enforcement. A statement of agreed facts describes the situation.

On nights during the months of September, October, and November assigned to the plaintiff by the commission for racing with parimutuel betting, the track has drawn several thousand customers into the small community of Dighton. In the years prior to 1974, the plaintiff, consulting as necessary with the town authorities, had taken care of public safety and security at the track by hiring what it considered to be a suitable number of town police officers, out-of-town officers, or private persons to patrol the place and maintain order. On January 16, 1974, the town further regulated the matter by adopting a by-law at a special town meeting held that day.[1] This required the plaintiff to request the chief of police to assign town police officers each racing night in the ratio of one officer to each 400 persons expected to be in attendance, and to compensate the officers at the prevailing extra duty rate. The text of the

---

[1] The by-law was approved by the (Acting) Attorney General under G. L. c. 40, § 32.

by-law is reproduced in the margin.[2] Although framed in general terms, the by-law as a practical matter would have application only at the racing meetings and the annual Rehoboth Fair.

Like the trial judge, we find no merit in the plaintiff's claim that this commonplace by-law will deprive it of property without due process of law in violation of the Federal or State Constitution.[3] The object of the by-law, to preserve the peace, lies in the heartland of acknowledged purposes of the State and, on inspection at least, there is nothing plainly irrational about the means employed to further the aim. See *Commonwealth* v. *Henry's Drywall Co.*, 366 Mass. 539, 541 (1974); *Jewel Cos.* v. *Burlington*, 365 Mass. 274, 278 (1974); *Mobil Oil Corp.* v. *Attorney Gen.*, 361 Mass. 401, 413 (1972). The plaintiff makes little progress against the presumption of validity that attaches to regulations of this sort. Cf. *Hall-Omar Baking Co.* v. *Commissioner of Labor & Indus.*, 344 Mass. 695, 700 (1962). If — which is not the case — it were necessary for the town to justify the particulars of the by-law rather than for the plaintiff to overthrow them as arbitrary, it could be noted that the practice of having the sponsor pay

---

[2] The by-law reads as follows:
"PRUDENTIAL AFFAIRS AND INTERNAL POLICE
"1. No gathering, meeting, dance or event to which the public is invited for a consideration, at which alcoholic beverages will be sold, and at which attendance exceeds four hundred (400) persons, shall be held in the Town of Dighton after six o'clock, post meridian time, unless the sponsor of such gathering, meeting, dance or event requests the Chief of Police to assign one Dighton police officer in uniform for every four hundred (400) persons in attendance.
"2. Said sponsor shall base each such request upon the previous year's attendance and, if none, upon advance ticket sales and reservations.
"3. Such police officers assigned shall be paid by said sponsor at the prevailing extra duty rate."

[3] The plaintiff has had the boon of a preliminary injunction (issued by another judge) staying the enforcement of the by-law since shortly after the filing of the action on July 11, 1974, although it is not apparent how the plaintiff could establish (among other requisites to the issuance of such an injunction) that it had a reasonable prospect of success on the merits.

for the necessary police protection is common and unchallenged; that the number of officers in relation to attendance admittedly conforms to the past experience at this track; that the limitation to local officers assigned by the police chief may well improve the discipline of the group and insure their authority to act on the spot; that the rate of compensation established is the same as that for similar duty by the local officers; and that to leave the compensation at large might threaten the effectiveness of the plan of the by-law.

The plaintiff suggests that the validity of such a regulation ought to turn not on whether there is some rational basis for it, but on whether, in the light of its objective, it interferes no more than is reasonably necessary with the activities of the person or entity regulated. On this premise the plaintiff attempts to show that the existing way of policing the track was good enough, and that the by-law may simply exact a higher price for approximately the same end result. The suggested standard would invite us, in effect, to examine whether the legislative body has searched out a method of regulation that is minimally restrictive of individual choice. Such a judicial examination is inapposite to the present field. Cf. *Aptheker* v. *Secretary of State*, 378 U.S. 500, 512 (1964). It would distort our role under the Constitution by involving us in appraisals of the expediency of the enactment. See *Corning Glass Works* v. *Ann & Hope, Inc.*, 363 Mass. 409, 416 (1973); *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health*, 348 Mass. 414, 422 (1965). Arguments of that order should be addressed, not to us, but to the intelligence or sense of fairness of those who could act to repeal the by-law. See *Corning Glass Works* v. *Ann & Hope, Inc., supra* at 419.

As indicated by its caption — "Prudential Affairs and Internal Police" — the by-law purports to be an exercise of power under G. L. c. 40, § 21 (1), by which towns are authorized to adopt by-laws "not repugnant to law" "[f]or directing and managing their prudential affairs, preserving peace and good order, and maintaining their internal police." But the plaintiff contends that the field was occupied

by the statute creating the State Racing Commission, and that the by-law is thus inconsistent with a "[law] enacted by the general court"[4] and beyond the scope of the town's powers of "home rule." General Laws c. 128A, § 8, is pointed to. This directs the commission, when it deems necessary, to apply to the Department of Public Safety, or the Metropolitan District Commission police if they have jurisdiction, or to the police department of a city or town in which a racing meeting is to be held, to furnish a police detail in such numbers as the commission may require. The agency applied to is then obliged to furnish the detail, which the commission assigns to duty at the meeting. Police officers so engaged are under the commission's operational authority, but the cost is borne by the licensee. Section 8 has never been invoked by the commission for any meeting at the present track. We think the provision was not intended to displace local law; one would expect it to be used on occasions when local arrangements seem unsatisfactory, although that might not exhaust its possible use. Surely the existence of the present by-law is not an obstacle to the accomplishment of any purpose of § 8; rather the by-law is in aid of the same purposes. So the argument of preemption and inconsistency is quite unconvincing. See *Bloom* v. *Worcester*, 363 Mass. 136, 155-157 (1973).

Judgment for the defendant entered below is affirmed.

*So ordered.*

---

[4] See *Amendments to the Constitution of the Commonwealth*, art. 89, § 6.