BERTRAM SOMERS'S CASE.

Essex.    May 9, 1962. — June 25, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER,
& SPIEGEL, JJ.

*Workmen's Compensation Act, Incapacity. Proximate Cause. Evidence,
Opinion: expert.*

Medical testimony in a workmen's compensation case warranted a finding
that there was a causal connection between a severe blow suffered by
the employee while at work and disability due to an exploratory opera-
tion performed on his testicle to ascertain whether a hemorrhage therein
might have resulted from the blow, although the operation revealed no
hemorrhage; but such testimony indicated no more than a possibility
or chance that the blow brought about development of a cancerous con-
dition of the testicle for which it was subsequently removed in a second
operation and did not warrant a finding of a causal connection between
the blow and disability due to the second operation.

CERTIFICATION to the Superior Court of a decision by the
Industrial Accident Board under the workmen's compensa-
tion act.

The self insurer appealed from a decree by *Brogna, J.*,
in accordance with the board's decision.

*Norman P. Beane, Jr.* for the self insurer.

No argument nor brief for the employee.

SPALDING, J.   In this claim for workmen's compensation
there was evidence of the following: The employee worked
for Bailey Company, Inc., a self insurer, as a roll machine
operator.   On January 14, 1959, he and a fellow employee
were lifting a coil of steel material wound around a reel.
Attached to the reel were four wooden sticks which served
as handles to facilitate lifting.   While the employee was en-
gaged in lifting the coil one of the sticks broke and struck
him in the left scrotal area, causing acute pain in the left
testicle.   "There were no bruises but he was in pain where
he got hit."   The pain subsided and he completed his work
for the day.   About a week or ten days later the left tes-

ticle began to swell. On February 10 the employee consulted Dr. Mudge, a general practitioner. Dr. Mudge found that the employee's left testicle was about three times its normal size and he made arrangements to have the employee examined by Dr. Albright, a surgeon. Suspecting a hemorrhage in the testicle, Dr. Albright on April 16 performed an exploratory incision, but no hemorrhage was discovered. Following the operation, the employee convalesced at home for two weeks and then returned to work. The period of disability resulting from this operation ran from April 15, 1959, to May 4, 1959.

"Through the summer everything seemed to be fine and then about the latter part of October, the testicle started getting bigger." The employee consulted Dr. Albright again and on December 17, suspecting the possibility of a tumor, the doctor removed the testicle. Microscopic slides disclosed "seminoma," a form of cancer. A further operation was advised and on January 14, 1960, a radical groin dissection was performed which embraced "all spreading areas of possible cancerous" growth. The employee returned to work on March 14, 1960.

The single member, after finding facts substantially in accordance with the evidence recited above, reviewed the medical evidence and concluded that the "employee's injury to his left testicle bears causal relation to the development of the seminoma that was found at this site and to the necessity for the operative procedures which followed." He further concluded that "as a result of the necessary treatment of the employee's injury and its sequelae . . . the employee was rendered totally disabled for work from April 15 to May 4, 1959, and from December 16, 1959, to March 14, 1960." Compensation in accordance with these findings was awarded.

The findings of the single member were adopted by the reviewing board. On appeal the Superior Court entered a decree in accordance with the board's decision. The case comes here on appeal by the self insurer.

That the employee's injury arose out of and in the course

of his employment is not disputed. The question for decision is whether the evidence warranted the board's finding that the injury was the cause of the two periods of disability for which it awarded compensation. This calls for an analysis of the medical evidence in some detail.

Dr. Mudge testified that the blow was not the cause of the cancer, but "if he had not had a blow and if he had come to . . . [Dr. Mudge's] office and to the surgeon the next day, we would have taken out the testicle for cancer much earlier, and the history of the blow and trauma changed the whole treatment and cause for surgery." When asked whether there was a relation between the seminoma and the injury, he answered: "[Y]es; we believe that any irritant or aggravation can make any new growth worse; an operation can make a new growth worse — cutting into it." He further testified that he could not say whether the tumor existed prior to the date of the injury; nor did he know whether there was any "relation between the seminoma and the injury." Dr. Albright, when asked, "[W]hat effect, if any, would you say that trauma to the left testicle would have?" replied: "I think it had effect upon his medical treatment most of all and the ability of the physicians involved, including myself, to evaluate the patient's subsequent illness with the facts at hand. . . . I think one has to separate logic from speculation and when we get into speculation I think we recognize speculation. I am saying the effect could be aggravation of the condition itself." He was "not prepared to say that the trauma definitely played any part in the development of the seminoma." He further testified that if the employee "had a blow on the testicle, his impression is that it was aggravating in its nature, although he doesn't see how anyone can give more than an impression." Asked on cross-examination whether the condition found on February 19 was organically related to the injury, he stated: "From the evidence at hand then, at that examination, I thought it was, my statement is definite in stating it probably was. . . . I think it was possible, but I don't minimize a blow of 100 lbs. hitting him in the

groin and saying that wasn't an industrial accident, you mustn't minimize the victim.'' He was then asked whether on the basis of later developments there was any relation between the injury and the condition existing on February 19, and he replied: '' [I]t is possible . . . that if malignant cells which may have been dormant sustained an injury it might take two or three weeks for the cells to either multiply or result in accumulation of fluid or swelling of the testicle, so that it is not unreasonable to explain the effect of an injury on cancer cells resulting in swelling at a later date. This opinion . . . is a possibility to explain the situation.''

Whether there was a causal connection between the injury which the claimant sustained on January 14, 1959, and the disabilities for which he seeks compensation is a matter which the board could decide only with the aid of expert testimony. *Hachadourian's Case,* 340 Mass. 81, 85. But the testimony of the medical experts does not warrant the board's finding that ''the employee's injury . . . bears causal relation to the development of the seminoma.'' That testimony, which we have set out in detail, is confusing and somewhat equivocal. At most it establishes no more than a possible connection between the injury and the disease. The ''opinion of a medical expert, however phrased, which amounts to no more than an expression indicating the possibility or chance of the existence of a causal connection between the accident and the disability, is not enough to establish the accident as a cause and the disability as the effect.'' *Josi's Case,* 324 Mass. 415, 418. *Hachadourian's Case,* 340 Mass. 81, 86. We are mindful of the medical testimony to the effect that the trauma affected the diagnosis of the claimant's condition. But a removal of the testicle because of seminoma if properly treated was bound to occur at one time or another and there is no evidence to show that the period of disability would have been less had the removal occurred earlier. The board's order awarding the claimant total incapacity compensation for the second period of disability (December 16, 1959, to March 14, 1960) cannot stand.

However, the award of disability compensation for the first period (April 15, 1959, to May 4, 1959) rests on a different footing. That disability was due to a convalescence from the first operation, on April 16, which was described as an exploratory operation to ascertain whether a hemorrhage might have resulted from the injury. This operation appears to have been a reasonable course to pursue based on the suspicions entertained by the doctors at the time. That the operation revealed that there was no hemorrhage does not break the causal relationship. It was open to the board to find that the operation was undertaken as a reasonable medical precaution in view of the injury sustained by the employee on January 14. The award of compensation for the period from April 15 to May 4, 1959, is to stand.

The decree is reversed and a new decree is to be entered in conformity with this opinion.

*So ordered.*