RETIREMENT BOARD OF BROOKLINE *vs.* CONTRIBUTORY
RETIREMENT APPEAL BOARD & another.[1]

No. 91-P-833.

Norfolk. September 22, 1992. - October 29, 1992.

Present: BROWN, KASS, & IRELAND, JJ.

*Retirement. Police*, Retirement. *Contributory Retirement Appeal Board.*
*Public Employment*, Accidental disability retirement, Police. *Adminis-*
*trative Law*, Judicial review. *Proximate Cause. Statute*, Construction.
*Words*, "Duties."

The Contributory Retirement Appeal Board's determination, that a claim-
ant had met his burden of establishing a causal connection between his
disability and an injury sustained in the course of his employment, was
supported by substantial evidence. [480-482]

There was no merit to the contention of a municipal retirement board that
an applicant for disability retirement benefits was not disabled from
performing his duties as a police officer, within the meaning of G. L. c.
32, § 7, because he was medically capable of doing other less strenuous
work. [482-484]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 9, 1990.

The case was heard by *Joseph S. Mitchell*, J.

*David Lee Turner*, Town Counsel, for the plaintiff.

*Harold L. Lichten* for the claimant.

BROWN, J. The Brookline retirement board (local board)
appeals from a judgment of the Superior Court affirming a
decision of the Contributory Retirement Appeal Board
(CRAB) which allowed the claimant's application for acci-
dental disability retirement benefits under G. L. c. 32, § 7.
As both parties have placed principal reliance on *Quincy Re-*
*tirement Bd.* v. *Contributory Retirement Appeal Bd.*, 340

---

[1]Richard Simmons.

Mass. 56 (1959), our task on appeal is to fit the reasoning and result reached in that case to the instant circumstances.

We rehearse the underlying facts, which are undisputed, in summary fashion. The claimant, Richard Simmons, became a police officer with the Brookline police department in December of 1977. Since approximately 1976, Simmons has sustained repeated, nonwork-related injuries to his right foot, including ankle sprains. On February 20, 1985, while making an arrest, Simmons fell and twisted his right ankle. He returned to work on light duty status in March, 1985. His ankle became progressively more unstable, and, in July, 1985, his treating orthopedist, Dr. Frank Bunch, performed an arthroscopy procedure on his right ankle joint. Simmons subsequently developed an infection at the site of the arthroscopy, which caused degenerative changes in the ankle. He returned to light duty work in September, 1985, as a police dispatcher.

In March, 1989, Simmons filed an application for accidental disability retirement benefits pursuant to G. L. c. 32, § 7. A regional medical panel, convened pursuant to G. L. c. 32, §§ 6(3)(*a*) & 7(1), as amended through St. 1987, c. 697, § 32, examined Simmons on April 20, 1989. Following the examination, the panel found that, although Simmons was disabled from regular duty as a police officer, he could continue his present work as a dispatcher. The panel also found that Simmons' disability was likely to be permanent and that the disability was such as might be the natural and proximate result of the personal injury sustained or hazard undergone for which retirement is claimed.

Based on the medical panel's determination "that [the claimant] was not substantially unable to perform *all* [emphasis added] the duties of a police officer," the local board denied Simmons' application because he could perform the duties of a police dispatcher, which is considered sedentary work. Simmons appealed from that decision to CRAB, which assigned the case to the division of administrative law appeals for a hearing. G. L. c. 32, § 16(4). Following a hearing, the administrative magistrate submitted a decision recom-

mending that the decision of the local board denying the application be reversed. On July 6, 1990, CRAB issued its decision, which adopted the findings of fact made by the administrative magistrate and remanded the matter to the local board with instructions to allow Simmons' application for accidental disability retirement benefits.

The local board sought judicial review of CRAB's decision in the Superior Court, pursuant to G. L. c. 30A, § 14. A judge of that court affirmed CRAB's decision, and the local board appealed.

On judicial review under G. L. c. 30A, "[a] decision of CRAB may be set aside only if based upon an error of law or unsupported by substantial evidence."[2] *Robinson* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. 634, 636 (1985). See *Bagley* v. *Contributory Retirement Appeal Bd.*, 397 Mass. 255, 258 (1986). "Under the substantial evidence test, a reviewing court is not empowered to make a de novo determination of the facts, to make different credibility choices, or to draw different inferences from the facts found by the [agency] . . ." (citations omitted). *Pyramid Co.* v. *Architectural Barriers Bd.*, 403 Mass. 126, 130 (1988).

1. The local board argues that Simmons' disability, if any, was due to the infection which came about as a result of the arthroscopy of the claimant's right ankle and was not causally related to any injury sustained in the course of his employment as a police officer. Since the arthroscopy was subsequently deemed to have been unneccesary, the local board goes on to contend that it follows that there can be no causal relation between the disability caused by the infection and the injury sustained by Simmons on February 20, 1985.

The medical panel concluded that Simmons' disability was "primarily the result of the post-operative infection following the arthroscopic procedure. This procedure was done for lateral instability which may or may not have been present prior to February, 1985, however, the injury of February,

---

[2]Substantial evidence is defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1(6), as inserted by St. 1954, c. 681, § 1.

1985, would seem to be an aggravating factor and therefore there would appear to be a causal relationship of his disability to his work as a policeman."[3] Simmons has the burden of proving that his disability was causally related to the personal injury sustained in the course of his employment as a police officer. *Blanchette* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. 479, 482-483 (1985). The medical panel's certification that the claimant's disability might be causally related to the February, 1985, injury "is not conclusive of the ultimate fact of causal connection but stands only as some evidence on the issue. . . . The final determination in this case whether causation was proved was reserved to [CRAB], based on the facts found and all the underlying evidence, including both the medical and non-medical facts." *Blanchette* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. at 483.

In the present case, CRAB determined that the claimant had met his burden of establishing causal connection, a determination which is supported by the evidence. That the claimant's condition worsened as a result of the arthroscopy, which was subsequently proven to have been unnecessary, does not alter the fact that the original ankle injury in February, 1985, was work-related. Once it is established that his ankle sprain was work-related, further disability that arose from complications incident to medical treatment for the ankle sprain is also work-related. "The law is well settled that, in an action of tort for negligence causing bodily injury, the negligence of a physician, properly chosen, in treating that injury does not destroy the causal connection between that injury and the consequent suffering, even so much of the suf-

---

[3]This conclusion was consistent with the opinion of Dr. Bunch, Simmons' personal physician who stated that the claimant's "present condition is directly related to his injury on February 20, 1985, which aggravated a pre-existing condition," and the opinion of a Dr. Robert McGuirk, who also stated that the claimant's disability was causally related to the injury sustained at work on February 20, 1985. As might be expected, conflicting medical testimony was offered by Dr. William MacAusland and Dr. John Doherty, who both examined the claimant at the request of the town of Brookline.

fering as arises from the negligent treatment and would not have arisen if the injury had been properly treated." *Sacchetti* v. *Springer*, 303 Mass. 480, 481 (1939). See *Burns's Case*, 218 Mass. 8, 10-11 (1914); *Somers's Case*, 344 Mass. 581, 585 (1962). See also Locke, Workmen's Compensation § 223 (2d ed. 1981).

2. The major contention of the local board is that since the medical panel reported that Simmons could continue to work as a dispatcher, even though he was disabled from performing the full range of the regular duties of a police officer, CRAB should not have ordered the allowance of his application for accidental disability retirement benefits. It is the local board's position that since Simmons is medically capable of working as a dispatcher, and since the town of Brookline is willing to assign him permanently to such duties, he is not totally and permanently disabled within the meaning of G. L. c. 32, § 7. This argument is premised on an incorrect standard of law.[4]

"A certification of incapacity is a condition precedent to accidental disability retirement by the local board. . . . Here the medical panel based its refusal to certify disability upon the fact that [the claimant] was able to do sedentary work, although he was unable to engage in the usual duties of a lieutenant in fighting fires. We agree with the appeal board that in so doing the local board applied an incorrect standard of law. 'Disability' is defined in § 7 as total and permanent incapacity 'for further duty.'[5] We think it a fair reading of the statute that the incapacity referred to is the substantial inability of an applicant to perform the duties of his particular job or work of a similar nature or for which his training

---

[4]Deciding as we do, we have no need to discuss whether the town's position lacks factual support in the record.

[5]Section 7(1), as appearing in St. 1982, c. 630, § 18, reads, in relevant part: "Any member . . . who becomes totally and permanently incapacitated for further duty . . . by reason of a personal injury sustained or a hazard undergone as a result of, and while in the performance of, his duties . . . without serious and willful misconduct on his part, . . . shall be retired for accidental disability . . . ."

and qualifications fit him." *Quincy Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 340 Mass. at 60.

In *Quincy Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, *supra* at 58, the medical panel concluded that the claimant, a lieutenant in the fire department, who injured his right knee in the course of his employment, was "not mentally or physically incapacitated for further duty in his present position" and that he could perform sedentary work. Based on the report of the medical panel, the local board refused to allow the application for accidental disability retirement. CRAB's decision ordering the local board to grant the retirement was affirmed on appeal. *Id.* at 62.

Here, CRAB concluded that the claimant "is in fact disabled from performing the duties of a police officer." There is substantial evidence to support that conclusion if we read the word "duties," as the *Quincy Retirement Bd.* decision (340 Mass. at 60) instructs, to mean the full range of duties generally required of a police officer.[6] The claimant was hired as a police officer, not as a dispatcher. Even though all dispatchers are police officers, there is nothing in the record to indicate that the practice in the Brookline police department is to assign certain officers permanently to work as dispatchers. In fact, evidence in the record suggests that the Brookline police department may not permit permanent light duty assignments. Moreover, such a permanent assignment may conflict with the terms of the collective bargaining agreement between the town of Brookline and its police officers.

Finally, we note, as did CRAB, that the local board can have Simmons reexamined periodically by a regional medical panel, and, if it is determined that he is no longer disabled, he can be ordered to return to active service. G. L. c. 32, § 8. See *Milton* v. *Personnel Administrator of the Dept. of Personnel Admn.*, 406 Mass. 818, 825 (1990). See also *Quincy*

---

[6]If this decisional law has become outworn in light of changed conditions, "it's for the [Supreme Judicial Court] to make the change." Kaplan, Do Intermediate Appellate Courts Have a Lawmaking Function?, 70 Mass. L. Rev. 10, 13 (1985).

*Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 340 Mass. at 62.

*Judgment affirmed.*