Hinkle, J.
Chebacco Liquor Mart, Inc. (“Chebacco”) challenges the Alcoholic Beverages Control Commission’s (“ABCC’s”) decision to suspend Chebacco’s license to sell alcoholic beverages for 30 days because Chebacco illegally sold alcohol on Sundays. The ABCC ruled that Chebacco violated 204 Code Mass. Regs. 2.05(2) by selling alcoholic beverages on Sundays from January, 1996, through September 8, 1996, in violation of G.L.c. 138, §33. Chebacco contends that the ABCC’s decision should be reversed under G.L.c. 30A, §14, as “in violation of constitutional provisions”; namely, the equal protection and substantive due process provisions of the United States and Massachusetts constitutions.
Because I am persuaded that the regulatory classification upon which the ABCC’s decision rested is arbitrary and thus unconstitutional as applied to Chebacco, the ABCC’s decision is set aside. Thus, Chebacco’s motion for judgment on the pleadings is allowed, and the ABCC’s motion is denied.
BACKGROUND
The following material facts are undisputed.[1] Chebacco is the holder of a retail license for the sale of alcoholic beverages to be drunk off the premises under G.L.c. 138, §15. Chebacco also sells other sundry items like tobacco products, soft drinks, dairy products and eggs and is open every Sunday to offer these items for sale. Chebacco is located in the town of Essex, Massachusetts, and competes with a number of liquor stores in neighboring Ipswich. Before 1990, both Chebacco and its Ipswich competitors were statutorily prohibited from selling alcohol on Sundays.[2] Because of the prohibition, Chebacco did significant business on Saturdays.
In 1990, the Legislature enacted an exception to the prohibition on Sunday sales. General Laws chapter 136, Section 6(52), provides that the prohibition set out in G.L.c. 136, §5 (which I refer to as the “Sunday Closing Law”), does not apply to a liquor store if it is located in one of several counties and is in a town, any part of which is within 10 miles of the Massachusetts border with New Hampshire or Vermont, if that town’s licensing authority decides to permit Sunday sales (I refer to this provision of G.L.c. 136, §6(52) as the ”Towns-Near-the-Border Exception”).[3]
As a result of this change, the competitive landscape along the Ipswich-Essex border has changed. All of Ipswich’s package stores are more than 10 miles from the New Hampshire border.[4] Nevertheless, because a small uninhabited portion of Ipswich[5] — almost entirely marshland and beach — lies within 10 miles of the New Hampshire border (within what I refer to as the “10-mile zone”), and because Ipswich’s licensing authority elected to permit Sunday sales, liquor stores in Ipswich may now sell alcohol on Sundays. Essex, in contrast, does not include any land within the 10-mile zone, and so although the Essex Police Chief,[6] the Essex Selectmen,[7] and some residents[8] support Sunday sales in that town, Chebacco and other Essex stores continue to be prohibited from selling on Sundays.
Five Ipswich liquor stores in particular are competitive with Chebacco.[9] Like Chebacco, which is 15 miles from the New Hampshire border, these stores are more than 10 miles from the border. As a result of the changed law permitting them but not Chebacco to sell alcohol on Sundays, Chebacco has lost business to them and possibly to other Ipswich stores.[10] Customers who previously bought liquor from Chebacco on Saturdays for Sunday consumption now purchase liquor on Sundays from Chebacco’s Ipswich competitors. In addition, Chebacco has lost business because of a general loss of goodwill, as customers “switched their allegiance” to Ipswich stores that sell alcohol all week. At Chebacco’s hearing before the ABCC, liquor store owners from other towns in which Sunday sales are prohibited (and which like Chebacco are near towns falling within the Towns-Near-the-Bor *34 der Exception) testified that they had experienced similar effects.
In order to prepare the way for a challenge to the legality of the distinction drawn by the Exception, John B. Chisholm, who with his wife owns Chebacco, sold alcohol on Sundays over an approximately eight-month period (beginning January 7 and running through September 8, 1996). Chebacco obeyed restrictions applicable to stores that may legally sell on Sundays: for example, it did not sell alcohol on a Sunday that was also a legal holiday. The store averaged sales of several hundreds of dollars worth of alcohol on each Sunday it was open.[11]
On September 10, 1996, the ABCC received a complaint from the Essex Chief of Police reporting that Chebacco had sold alcohol on Sunday, September 8, 1996. On Sunday, September 15, 1996,[12] an ABCC investigator inspected the store and found that it was open with the alcoholic beverage section blocked off. The investigator saw no liquor sales taking place. On October 15, 1996, the investigator interviewed Chisholm, who acknowledged that he had sold alcohol on Sundays during the eight-month period described above.
On June 3, 1997, the ABCC held a hearing concerning Chebacco’s violations. Commissioner Suzanne Iannella heard testimony from the ABCC investigator, the Essex Chief of Police, Chisholm, and two other liquor-store owners affected by the Exception (William Greene, owner of a store in Burlington, , testified that he is prohibited from selling on Sundays and that he has lost business to a store in Billerica, which falls within the Exception; Jane Cahill, owner of a store in Stoneham, testified that she is barred from selling on Sundays and that she has lost business to stores in North Reading and Wilmington, which fall within the Exception). At the hearing, counsel for Chebacco raised the same constitutional issues raised here.
The ABCC issued its decision dated June 11, 1997. It found Chebacco to have violated 204 Code Mass. Regs. 2.05(2), which provides that:
No licensee for the sale of alcoholic beverages shall permit any . .. illegality of any kind to take place in or on the licensed premises. The licensee shall be responsible therefor, whether present or not.
(The illegality found by the board was “illegal sales of alcoholic beverages on Sunday.") The ABCC also suspended Chebacco’s license for 30 days.[13] The decision did not address the constitutional issues raised by Chebacco. Chebacco submitted a Motion for Reconsideration of Commission’s Decision by cover letter dated June 18, 1997; the ABCC denied that motion on June 24, 1997.
DISCUSSION
I. Standard of Review
I review ABCC decisions under G.L.c. 30A, §14(7), which states in pertinent part:
The court may affirm the decision of the agency, or remand the matter for further proceedings before the agency; or the court may set aside or modify the decision, or compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party may have been prejudiced because the agency decision is—
(a) In violation of constitutional provisions;
Chebacco, as the party appealing an administrative agency decision, bears the burden of demonstrating invalidity. Coggin v. Massachusetts Parole Bd., 42 Mass.App.Ct. 584, 587 (1997). In reviewing an agency decision, this Court must give due weight to the agency’s experience, technical competence, specialized knowledge and the discretionary authority conferred upon it by statute. Iodice v. Architectural Access Bd., 424 Mass. 370, 375-76 (1997), citing G.L.c. 30A, §14(7). This Court may not substitute its judgment for that of the agency. Southern Worcester Cty. Regional Vocation Sch. Dist. v. Labor Relations Comm’n, 386 Mass. 414, 420-21 (1982), citing Olde Towne Liquor Store, Inc. v. Alcoholic Beverages Control Comm’n, 372 Mass. 152, 154 (1977). Likewise, this Court cannot interfere with the agency’s imposition of a penalty unless there are “extraordinary circumstances.” Vaspourakan Ltd. v. Alcoholic Beverages Control Comm’n, 401 Mass. 347, 355 (1987), citing Levy v. Board of Reg. & Discipline in Medicine, 378 Mass. 519, 528-29 (1979). ‘The approach is one of judicial deference and restraint, but not abdication.” Arnone, 43 Mass.App.Ct. at 34, citing Fafard v. Conservation Comm’n of Reading, 41 Mass.App.Ct. 565, 572 (1996).
As noted above, I find and rule that Chebacco has sustained its burden of demonstrating that the ABCC’s decision to suspend Chebacco’s license is invalid: the Towns-Near-the-Border Exception to the prohibition on Sunday alcohol sales violates principles of equal protection and due process by the manner in which it distinguishes among liquor stores. The following discussion explains my conclusions.
II. Constitutionality of the Distinction Drawn by the Exception, as Applied to Chebacco
I note at the outset that Chebacco does not appear to be challenging the facial constitutionality of the Towns-Near-the-Border Exception or other provisions of the Sunday Closing Law or its exceptions. Rather, Chebacco frames its challenge as a contention that the suspension of its license “constitutes an unconstitutional application of G.L.c. 138, §33" (emphasis supplied), the statute prohibiting Sunday sales by stores that, like Chebacco, are licensed under G.L.c. 138, §15. The argument in support of this challenge appears to be that it was unconstitutional for the ABCC to penalize Chebacco for selling on Sundays, when similarly situated stores are permitted to sell on Sundays.
*35 A. Equal Protection
“For the purpose of equal protection analysis, [the] standard of review under . . . the Massachusetts Declaration of Rights![14]] is the same as under the Fourteenth Amendment to the Federal Constitution.” Tobin's Case, 424 Mass. 250, 252 (1997), quoting Dickerson v. Attorney Gen., 396 Mass. 740, 743 (1986).[15]
Where a statutory classification like that made by the Towns-Near-the-Border Exception “involv[es] neither fundamental rights nor suspect classes,” it “will be reviewed under a rational basis test.” Take Five Vending, Ltd. v. Provincetown, 415 Mass. 741, 748 (1993) (cited in Tobin’s Case, 424 Mass. at 252).[16]This test
is the lowest level of judicial scrutiny. Marshfield Family Skateland, Inc. v. Marshfield, 389 Mass. 436, 445 (1983) [appeal dismissed, 464 U.S. 987] . . . "[U]nder the rational basis test, ‘the person making the challenge has an onerous burden of proof in establishing the invalidity of the statute.’ Commonwealth v. Henry’s Drywall Co., [366 Mass. 539, 541 (1974)]. . . ‘[I]f a statute or ordinance serves a legitimate purpose, and if the means the State adopted are rationally related to the achievement of that purpose, the legislation will withstand constitutional challenge’ (footnote omitted). Shell Oil Co. v. Revere, 383 Mass. 682, 686 (1981). . . ‘[A] statutory classification will not be set aside as a denial of equal protection ... if any state of facts reasonably may be conceived to justify it.’ Henry’s Drywall Co., [366 Mass. at 542].” Take Five Vending, Ltd., 415 Mass, at 748, quoting Marshfield Family Skateland, Inc., 389 Mass. at 446.[17]
Despite the deference to possible legislative intent embodied in the rational basis standard, the standard “is not a ‘toothless’ one.” Murphy v. Commissioner of the Dep’t of Indus. Accidents, 415 Mass. 218, 233 (1993). “Where the plaintiff demonstrates that a challenged classification lacks any rational basis [in] a legitimate State interest, we must declare such classification unconstitutional.” Id. (concluding that provision of Workers’ Compensation Act that imposed fee on certain appellants assisted by counsel but not on similarly situated appellants proceeding pro se violated equal protection principles).
Courts have found the Sunday Closing Law and various of its exceptions (set out in G.L.c. 136, §6) to serve a variety of legitimate state purposes. The purpose of the Sunday Closing Law itself has been interpreted to be the provision of a “uniform day of rest and relaxation.” Zayre Corp. v. Attorney Gen., 372 Mass. 423, 434 (1977). Certain exceptions to the prohibition have been understood to further the prohibition’s purpose, by, e.g., “adding to Sunday’s enjoyment,” id. at 439, quoting Gallagher v. Crown Kosher Super Mkt. of Mass., Inc., 366 U.S. 617, 623 (1961) (upholding prior version of the Massachusetts “Sunday law”) (finding exemptions for the Sunday sale of ’’tobaccos, confectioneries, fruits and frozen desserts" permissible). Other exceptions have been understood to serve other purposes, possibly at odds with the provision of a day of rest but nevertheless necessary. For example, an exception may be aimed at filling needs on an emergency basis, Zayre, 372 Mass. at 440 (discussing an exception for the sale of tires, batteries and automotive parts for emergency use): at filling needs that persist throughout the week, id. (discussing the exemption permitting small food stores to remain open on Sundays, which “accounts for the societal need to have such products available on a continuing basis, yet limits the impact on the labor force and the tranquillity of the day by restricting the size of the store which may so operate”); or at providing certain goods that must be sold fresh daily in order to be of any use at all, id. at 439.
The ABCC describes the Towns-Near-the-Border Exception as “permitting liquor stores near the border to stay open on Sundays." The Commission contends that the Exception serves a number of legitimate state purposes and suggests that the Legislature could have enacted the Exception with the following goals in mind:[18]
1. protecting revenue generated by businesses in the Commonwealth;
2. discouraging Massachusetts residents from engaging in “potentially illegal activity,” which I take to refer to the purchase of alcohol from out-of-state liquor stores on Sundays for illegal resale in Massachusetts;
3. contributing to the provision of a day of rest and relaxation by not exempting all liquor stores from the prohibition; and
4. serving the public convenience.
First, the ABCC asserts that the Towns-Near-the-Border Exception could be read to serve the goal of generating revenue for Massachusetts — in the form of excise taxes on liquor purchased in Massachusetts on Sundays — that would otherwise be directed to New Hampshire or Vermont if no liquor store in Massachusetts could sell alcohol on Sundays. The ABCC cites to caselaw from other states for the proposition that revenue protection is a legitimate state interest not offensive to equal protection. I of course agree. In addition, although the record does not reveal whether the Exception has been successful in achieving this purpose, it is reasonable to assume that some consumers who before 1990 would have purchased alcohol on Sundays from non-Massachusetts stores might now make their purchases at more conveniently located Massachusetts stores. In other words, the Exception appears to bear some relation to the purp°se of revenue generation.
However, this does not end my analysis because any exception, no matter how arbitrary, that permitted *36 certain liquor stores to sell on Sundays could be said to serve the goal of revenue generation. Any such exception would lead to an increase in Sunday sales by Massachusetts liquor stores and a corresponding increase in excise taxes collected by the Commonwealth. Nevertheless, equal-protection principles are not flexible enough to accommodate any such exception: for example, an exception that permitted Sunday sales only by liquor stores whose name began with an “S” would be constitutionally impermissible.
The ABCC’s suggestion that the Exception could be read to support the goal of “serving the public convenience” raises similar problems, as does its suggestion that the Exception supports the goal of preserving Sunday as a common day of rest and relaxation by limiting the class of liquor stores permitted to sell on Sundays. Again, any exception, no matter how arbitrary, that permitted certain but not all stores to sell liquor on Sundays would arguably support the public convenience while at the same time preserving Sunday as a common day of rest and relaxation. Nevertheless, an arbitrary exception would be constitutionally unacceptable.
Finally, the ABCC suggests that the Exception may be understood to further the legitimate government purpose of discouraging Massachusetts residents from engaging in “potentially illegal activity,'” namely, buying or selling alcohol brought into the Commonwealth illegally under G.L.c. 138. §21. The ABCC’s theory appears to be that if Massachusetts liquor stores cannot sell on Sundays, Massachusetts residents will be tempted to turn elsewhere (to unlicensed importers) for their purchases (and analogously, if legal stores are not open on Sundays, some residents will be tempted to import alcohol illegally and sell it on Sundays). This argument is similarly problematic because any exception that made the legal purchase of alcohol on Sundays easier would tend to discourage illegal purchase. Even a totally arbitrary exception could serve this purpose. In other words, I am not persuaded that any relationship between a classification and a legitimate state goal suffices to insulate a classification from constitutional challenge.[19]
The ABCC argues that the Exception is not arbitrary. Rather, according to the ABCC, the Exception makes a meaningful distinction between stores according to their proximity to the border: specifically, by whether they are (1) near the Massachusetts border and thus likely, if open, to persuade customers who previously made Sunday purchases out-of-state to make them in Massachusetts, or (2) far away and thus unlikely, if open on Sundays, to have any impact on such customers.
This is not, however, the distinction that the Exception draws. It does not distinguish between stores according to their proximity to the border (as a “Distance-From-the-Border” Exception would do) but rather according to the towns in which they are located and the proximity of parts of those towns to the border. In considering why the Legislature might have opted for this Exception as opposed to a Distance-From-the-Border Exception, I considered whether the Legislature might have been attempting to respect some sort of nondelegable authority of municipalities to regulate the sale of alcohol within their borders. The parties’ briefs on this subject indicate, however, that nothing in the legislative history of the Towns-Near-the-Border Exception indicates that this was the Legislature’s intent.
In evaluating the Exception, it is not the fact that the Legislature has “drawn a line” that I find problematic. On the contrary: the Legislature is permitted — indeed, required — to draw lines; see, e.g., Paro v. Longwood Hospital, 373 Mass. 645, 649 (1977) (“Classification is an integral part of the legislative task and will not be interfered with by a judicial body unless the distinctions drawn by the enactment are ‘arbitrary or irrational’ or result in ‘invidious’ discrimination," citing Pinnick v. Cleary, 360 Mass. 1, 28 (1971)). Moreover, any such legislative line is likely to appear arbitrary in some respect (e.g., under a law excepting liquor stores within 10 driving miles of the border, the resulting distinction between a store 9.9 and 10.1 miles from the border would appear arbitrary). See, .e.g., Zayre Corp. v. Attorney General, 372 Mass. 423, 433-34 (1977) {“Every economic classification is in some mannér arbitrary but the drawing of the line between classifications is a task to be exercised at the discretion of the appropriate branch of government," i.e., the Legislature (emphasis supplied)).[20]
The problem with the Exception at issue here is not that it draws a line separating one class of liquor stores from another, with the inevitable result that liquor stores near but on opposite sides of the line are treated differently. The problem is rather that under the current Exception, whether a store may sell on Sundays is only tangentially related to its proximity to the border. Under the logic of the Exception, a liquor store 11 miles from the border might be prohibited from selling on Sundays, while a liquor store 100 miles away (but located in a town with a narrow arm stretching into the 10-mile zone) would be permitted to sell. The geography of Essex and Ipswich themselves is such that a store in northern Essex could be closer to the New Hampshire border than a store in southern Ipswich; yet the Ipswich but not the Essex store could sell alcohol on Sundays.[21] In sum, the relationship of the classification made by the Exception to any legislative goal that might reasonably be served by singling out stores near the border is “so attenuated as to render the distinction arbitrary or irrational.” Murphy, 415 Mass. at 230, quoting Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 446 (1985). The Exception constitutes “arbitrary discrimination between competitors [and its] impact is direct and clear.” Zayre, 372 Mass. at 448 (Braucher, J., dissenting). For this reason, I find and rule that the Exception violates state *37 and federal principles of equal protection as applied to Chebacco.
B. Due Process
Chebacco also contends that the Exception violates principles of due process under the state and federal constitutions.[22]
In Blue Hills Cemetery, Inc. v. Board of Reg. in Embalming & Funeral Directing, 379 Mass. 368 (1979), the Supreme Judicial Court articulated the requirements of substantive due process as follows;
The due process clause of the Fourteenth Amendment to the United States Constitution demands that a statute bear a “reasonable relation to a permissible legislative objective.” Pinnick v. Cleary, 360 Mass. 1, 14 (1971). Under the analogous provisions of our State Constitution, we must determine [on a substantive-due-process challenge] ' whether [the challenged statute] “béars a real arid substantial relation to the public health, safely, morals, or some other phase of the general welfare.” Sperry & Hutchinson Co. v. Director of the Div . on the Necessaries of Life, 307 Mass. 408, 418 (1940).
Blue Hills Cemetery, Inc., 379 Mass. at 373.
- .The state and federal standards áre for most purposes identical. Blue Hills Cemetery, Inc., 379 Mass. at 373 n.8.
I examine the Exception in light of both standards and find it constitutionally lacking. As the discussion above shows, I find the “relation” between the statute and a “permissible legislative objective” to be less than reasonable. Additionally, although the Exception “bears” some “relation .to the public health, safely, morals, or . . . other phase of the general welfare,” I find the relationship too arbitrary to withstand constitutional scrutiny. Thus, for the same reasons as those outlined above, I And that the Exception violates state and federal principles of substantive due process, insofar as the Exception distinguishes between Chebacco and liquor stores located in towns that include land 10 miles from the state border.
ORDER
For the reasons set out above, plaintiffs motion for judgment on the pleadings is ALLOWED, and the defendant’s corresponding motion is DENIED. The ABCC’s decision of June 11, 1997, and its June 24, 1997 denial of plaintiffs motion for reconsideration are REVERSED.

Ordinarily, in a G.L.c. 30A, §14, review of an administrative agency’s decision, I would confine my understanding of the facts of the case to those facts found by the administrative agency. See, e.g., School Committee of Brockton v. Civil Svc. Comm’n, 43 Mass.App.Ct. 486, rev. denied 426 Mass. 1104 (1997); Retirement Bd. of Brookline v. Contributory Retirem’t App. Bd., 33 Mass.App.Ct. 478, rev. denied 414 Mass. 1101 (1992). Here, however, as plaintiff correctly noted in its motion for reconsideration of the ABCC’s decision, Administrative Record (“A.R.”) at 109-110, the ABCC found very few facts. (I can identify only two; the fact that “[Chebacco's] competitors are located in towns, located within towns, [sic] that are ten miles from the New Hampshire border,” A.R at 104; and the fact “that the licensee . . . permitted] an illegality on the licensed premises, to wit: . . . [the] illegal sales of alcoholic beverages on Sunday ... ,” A.R. at 105.) Rather than remand this case for further proceedings by the ABCC, as G.L.c. 30A, §14(7) permits me to do, I elect to base my decision on those facts that the parties do not dispute. This seems to me to be within the spirit of G.L. 30A, §14(4), which defines the “record of the proceeding under review” as “(a) the entire proceedings, or (b) such portions thereof as the agency and the parties may stipulate, or (c) a statement of the case agreed fp by the agency and the parties” (emphasis supplied). I trea he undisputed facts as akin to such an agreed statement.

Two statutes prohibit liquor stores from selling on Sundays; both continue to apply to Chebacco. General Laws chapter 136, Section 5 (the "Sunday Closing Law”) provides that "Whoever on Sunday keeps open his shop ... or other place of business, or sells .. . goods ... , or does any manner of labor, business or work, . . . shall be punished by a fine . . . ," and G.L.c. 138, §33 provides that “no licensee under [G.L.c. 138, §15],’’ which includes Chebacco, “... shall sell or deliver any alcoholic beverages on Sunday

General Laws chapter 136, Section 6, applies by its terms only to the prohibition set out in G.L.c. 136, §5 (G.L.c. 136, §6, begins: "Section five shall not prohibit the following:...”). It does not expressly address G.L.c. 138, §33’s prohibition on Sunday sales of alcohol. Nevertheless, the parties implicitly agree that G.L.c. 136, §6(52) operates to permit certain liquor stores to sell alcohol on Sundays.
General Laws chapter 136, Section 6, subsection 52 also contains' a second exception that applies to liquor stores regardless of location: it provides that Section 5 shall not prohibit the sale of alcohol on Sundays during the period beginning the Sunday before Thanksgiving and ending the Sunday before New Year’s Day. G.L.c. 136, §6(52). Again, this exception does not • expressly address the prohibition, on Sunday alcohol sales set out in G.L.c. 138, §33.

At the ABCC hearing, John B. Chisholm, who with his wife owns Chebacco, testified that “all of the stores in Ipswich” were located more than 10 “functional” miles from the New Hampshire border, meaning that they were located more than ten miles’ drive (as opposed to ten miles “as the crow flies”) from the border. AR. at 136.

his portion of Ipswich is uninhabited, as far as Chisholm knew when he was asked at the ABCC hearing. AR. at 125. There is no other evidence on this point.

At the ABCC hearing, plaintiffs counsel asked the Chief of Police whether he would “have had any objection to Chebacco Liquor Mart opening on Sunday if it were legally authorized” to do so; the Chief responded, “No, I wouldn’t." A.R. at 119.

Chisholm testified at the ABCC hearing that he spoke with the former chairperson of the Board of Selectmen, who told him that the Board “did not agree with the position that we found ourselves in and in fact the position they found themselves in of not being able to allow us to open.” A.R. at 127-128. When asked if the former chairman made “any representation” as to whether the Board would permit Chebacco to sell on Sundays if the law allowed this, Chisholm responded, “He said that they would absolutely do that.” AR. at 128.

 Chisholm testified at the ABCC hearing that he obtained “close to a thousand" signatures on a petition he placed on the store counter for customers to sign if they wished. A.R. at 131.1 infer this to be the petition in the record, A.R at 42-63 (page 63 is a duplicate of page 42) and duplicated at 86-206. The following declaration appears at the top of the petition: “I support a bill that would allow retail package good stores to sell alcoholic beverages on Sundays in the town of Essex as *38 well as the entire state of Massachusetts. I solemnly believe that laws governing an industry within a state should apply to everyone, and not just a certain few due to their location.” A.R. at, e.g., 42. Many of the signatories are not residents of Essex.

Specifically, Chisholm testified about six liquor stores in Ipswich. Although the testimony is not completely clear on this point, it appears that Chisholm considered five of these to be competitive with Chebacco.
Rooney’s Farm Store was Chebacco’s closest competitor; “it probably does everything we do a little bit bigger and a little bit better.” A.R. at 133. “Their operation is major food, deli operation, beer and wine. They do not have a hard spirits license however.” A.R. at 134.
‘The next competitor would be a store called Lacarel’s and that’s somewhat of a traditional downtown package store, difficult parking, so forth. It has a full liquor license but it’s been established many, many years. It does veiy well obviously on Sundays.” A.R. at 135.
The next store is one that just recently moved into a Star Market shopping center, closer now to the New Hampshire border, in Ipswich." A.R. at 135.
“And it is competing there with one of the major discount stores in the state that happens to be the Ipswich Bottle Shop, the furthest license in Ipswich, and the closest one to New Hampshire. That particular licensee we don’t pretend to compete with on pricing matters and so on and so forth. It’s just convenience and availability which would make our store more attractive to them.” A.R. at 135.
The other two licenses are very, very small variety stores and much smaller operations than the one I have.” A.R. at 135.
Chisholm testified that he offered “most generally” the same items for sale as “the stores in Ipswich,” A.R. at 135, and that he employed “probably less" employees than those stores, A.R. at 135.

Chisholm testified that “we came to realize that our customers were going to Ipswich on Sunday to buy products.” A.R. at 122. “(0]ne of the first things we started noticing was, and I think anybody else in the ... retail industry in the same position would probably vouch to that, traditionally on Saturday evenings it was always a veiy, veiy big business and sales in the off-premise retail business because you couldn’t buy on Sunday. That part of our business started to disappear veiy quickly and we did not have any large Saturday evenings anymore which made us try to delve more into actually what was happening and of course you do this by talking with people and customers and finding out what they did and people would admit that they went to Ipswich for beer or spirits or wine on Sundays. So that was the immediate effect we saw. The long range effect is that people — I have a fairly good competitor in a store called Rooney’s Market which probably has an operation that is perhaps an up-tick from mine and having lived in Ipswich I’m very familiar with his store and my own family has shopped there over the years. And I know that a person who gets accustomed to changing their habits of a store tend to stay with that and in many instances we feel that we lost business permanently to Rooney’s as a result.” A.R. at 122.

The figures submitted by Chebacco to the ABCC in its Hearing Memorandum, A.R. at 13-29, show that alcohol sales averaged $701.84 for the Sundays during which Chebacco was open. A.R. at 14-16.

 The ABCC investigator’s report gives the date as “Sunday, September 16, 1996." A.R. at 103. September 16, 1996, was a Monday; I infer the investigator to have intended to refer to the previous day.

On July 14, 1997, the parties filed an “Agreement to Stay Suspension” of Chebacco's license pending a decision in this case. The Agreement also includes Chebacco’s promise not to sell alcohol on Sundays unless it becomes licensed to do so.

The Fourteenth Amendment provides that “No State shall. . . deny to any person within its jurisdiction the equal protection of the laws.” The Massachusetts Constitution’s equal-protection provisions have been located in Article 1 of the Declaration of Rights (as amended by Art. 106 of the Articles of Amendment) as well as under other provisions of the Declaration of Rights. Opinion of the Justices, 408 Mass. 1215, 1223 (1990), citing Commonwealth v. Franklin Fruit Co., 388 Mass. 228, 229-30 (1983) (arts. 1 and 10); Dickerson v. Attorney Gen., 396 Mass. 740 (1986) (arts. 1, 6, and 7).

 See also Commonwealth v. Franklin Fruit Co., 388 Mass. 228, 234-35 (1983) (referring to both equal-protection and due-process analysis, Supreme Judicial Court stated that “Our standard of review is the same under the Fourteenth Amendment to the Federal Constitution as under the cognate provisions of the Massachusetts Declaration of Rights”).
Some cases have suggested the possibility that the equal-protection provisions of the Massachusetts Constitution might be less permissive than those of the United States Constitution. Any differences appear to be irrelevant to this case. See, e.g., Zayre Corp. v. Attorney Gen., 372 Mass. 423, 433 n.22 (1977) (challenge to constitutionality of prior version of G.L.c. 136, §§5 and 6) (There has been a suggestion in some of our prior decisions that, in regard to the equal protection concept, the Federal decisions may reflect a standard of review less restrictive than that required by the Massachusetts Declaration of Rights. See Corning Glass Works v. Ann & Hope, Inc., 363 Mass. 409, 416 (1973); Hutcheson v. Director of Civil Serv., 361 Mass. 480, 490 (1972). It is not necessary here to. explore such possible distinction as the [’]common day of rest(’) cases previously decided by this court apply the same standard as the Federal courts.").

The Supreme Judicial Court ”ha[s] held that 'the right ... to pursue one’s business’ is not a fundamental right necessitating strict scrutiny,” Take Five Vending, Ltd., 415 Mass. at 748, quoting Commonwealth v. Henry’s Drywall Co., 366 Mass. 539, 542 (1974), and here, as in Take Five Vending, Ltd., the plaintiff properly has not argued that it is a member of a suspect class.

Not surprisingly, given the difficult burden a plaintiff must overcome, challenges to the Massachusetts Sunday Closing Law and its exceptions have generally been unsuccessful. Zayre Corp. v. Attorney Gen., 372 Mass. 423, 428-32 (1977), sets out the history of such challenges at the appellate level.

While the Legislature’s actual intent is not dispositive of an equal-protection dispute, it may be relevant. The legislative history of the Towns-Near-the-Border Exception is largely unhelpful. A preamble to a 1992 amendment to G.L.c. 136, §6(52), which amended the Exception to include stores located in towns that contain land near the Vermont (as opposed to only the New Hampshire) border and corrected an apparent typographical error, provides that ’’[t]he deferred operation of this act would tend to defeat its purpose, which is to immediately authorize the retail sale of alcoholic beverages on certain Sundays in certain cities and towns, therefore it is hereby declared to be an emergency law, necessary for the immediate preservation of the public convenience.” St. 1992, c. 202. Aside from this statement, however, the legislative history of the Exception (as briefed by the parties in Chebacco Liquor Mart, Inc.’s Brief in Resp. to the Ct. Ord. of July 15, 1998, and Defendant ABCC’s Supp. Memo, of Law) reveals nothing in the way of legislative intent. There are, for example, no recorded debates concerning the Exception or alternatives to it. Chebacco Liquor Mart, Inc.’s Brief in Resp. to the Ct. Ord. of July 15, 1998, at 3-6.

In addition to challenging the relationship of the Exception to a legitimate governmental purpose, Chebacco asserts that the Exception is motivated by the “illegitimate purpose of benefiting one class [Le., liquor stores in towns with land in the 10-mile zone] to the detriment of another similar class lie., certain liquor stores in other towns]." Memorandum in Supp’t of Chebacco Liquor Mart, Inc’s M. for J. on the Pldgs. at 20. Because I find the Exception to be unconstitutionally applied to Chebacco on other grounds, I do not address this argument.

Furthermore, Legislative lines need not be maximally precise. Zayre Corp. v. Attorney General 372 Mass. 423, 433 (1977) (“a court will not invalidate a classification merely because .. . the classifications, be they slightly over or under inclusive, could have been drawn to more precise standards"). Additionally, a legislative line may serve to further part rather than all of a permissible state purpose: the Legislature may “address a problem one step at a time without violating equal protection guaranties.” Commonwealth v. Henry’s Drywall Co., 366 Mass. 539, 546 (1974), citing Williamson v. Lee Optical of Okla., Inc., 348 U.S. 483, 489 (1955).

 Chebacco, however, is located south of the southernmost tip of Ipswich (hence, no Ipswich liquor store could be farther from the border than Chebacco).
Nevertheless, a possibly absurd consequence of a law may be relevant to its constitutionality. See, e.g., Smith, 265 N.C. at 181 (“Incidentally, it is noted that in the resolution the 300 yards is to be measured not from the church building itself, but from the property line on which the building is located. A church able to purchase adjoining property might, at will, put its line within 300 yards of the club. This, of course, is not the situation here, i.e., not the particular application of the resolution.”).

Plaintiff does not challenge the Exception as violative of procedural due process: rather, its challenge appears to concern the Exception’s compliance with the guarantees of so-called substantive due process.