Walker, Joseph M., J.

INTRODUCTION

Plaintiffs Robert D. Wroble and Lois Wroble, and La Baron of New Bedford, Inc. (“La Baron”) (collectively “the plaintiffs”) commenced the present action seeking declaratory relief, injunctive relief, and damages, including multiple damages pursuant to G.L.c. 93A, §11.[2] The plaintiffs own and control a hair dressing salon/hairdressing academy located within the 244 Liberty Street Condominium complex at 244 Liberty Street in Brockton, Massachusetts. The plaintiffs occupy and use Unit 1A within the commercial condominium complex.
Defendants Richard Hassler (“Hassler”) and Gordon Asack (“Asack”), who serve as volunteer non-compensated Trustees of the 244 Liberty Street Condominium Trust (“the Trust”) have moved for summary judgment in their favor on the grounds that the modification of rules and regulations that the Trustees have taken to alleviate parking and parking lot access to the condominium complex were accomplished within the proper authority granted the Trustees in the Declaration of Trust. (Article V, Sections 5.1, et seq.) In particular, the defendants contend that the course of action that the Trustees pursued to allot parking spaces, to authorize placement of exterior parking space signs, and to levy fines, were all within the legal boundaries of trustee powers granted by the Master Deed, the Declaration of Trust and/or by statute.
The plaintiffs oppose the defendant’s summary judgment motion by asserting that the Master Deed, the Declaration of Trust and By-Laws, and G.L.c. 183A, §5 preclude the action taken by the defendants. Kaplan v. Boudreau, 410 Mass. 435, 436 1991); Consolidated Cigar Corp. v. Dept. of Public Health, 372 Mass. 844, 846 (1977). The plaintiffs claim that the Trustees’ actions constituted unlawful amendment of the By-Laws, deprive or interfere with their rights (if not all condominium unit owners) to all open and available parking spaces within the parking area; violate the terms of the Master Deed regarding placement of signs; and, finally, that the assessment and attempt to collect fines constitute an ultra vires, invalid action taken by the Trustees.
Through their cross motion for summary judgment, the plaintiffs rely on By-Law Article X in asking the court to invalidate any amendment, memorandum, notice or vote purporting to change the 244 Liberty Street Condominium By-Laws, or to adopt rules permitting the Trustees to allocate parking spaces and to assess fines against unit owners, without the unanimous consent of all the unit owners. The defendants oppose the cross motion for summary judgment by contending that when the actions relate to the use and operation of common areas and facilities — in this case, the parking lot spaces — by statute, the administrative rules and regulations are governed by the Trustees. G.L.c. 183(A), §11(d); Johnson v. Keith, 368 Mass. 316, 319 (1975).
Earlier in this litigation the plaintiffs sought a preliminary injunction, requesting the court to restrain the defendants from depriving or interfering with the plaintiffs’ rights to park in common areas, in open and available parking spaces, and to restrain the defendants from assessing, charging, billing or collecting fines from the plaintiffs for excess parking. The plaintiffs also requested the court to order the removal *433 of any markings, signs or postings that designated or reserved parking spaces within the parking lot to any unit owner or business. After hearing, on March 1, 2004, the request for injunctive relief was denied, the court determining that the state of the record precluded a finding that the plaintiffs were likely to succeed on the merits of their claims or that money damages would provide adequate relief if the plaintiffs were to succeed on the merits of their claims. A Single Justice of the Appeals Court (Mason, J.) denied the plaintiffs’ petition for relief from the Superior Court Order denying the request for preliminary injunction.

BACKGROUND

For the purposes of these summary judgment motions, the undisputed material facts as established by the summary judgment record[3] are as follows.
Hassler is a trustee of a family realty trust that owns four units within the commercial 255 Liberty Tree Condominium project. Hassler had been a non-compensated Trustee since on or about February 17, 1995. Asack owns four units at the complex, and has been a non-compensated Trustee since on or about December 13, 2001. Hassler and Asack are the only Trustees for the Trust. Asack’s units are located across from the Wrobles’ unit. The plaintiffs’ unit is used as a trade school for hairdressing and also offers hairdressing services to retail customers. Apart from La Baron, there is at least one other trade school establishment operating within the complex.[4] There are a total of twenty (20) commercial units located within the 244 Liberty Street complex.
Since at least 1995, parking issues have been a subject of discussion within the condominium association.[5] On March 8, 1995, the plaintiffs’ representative attended and voted with other association members to designate two parking spaces per unit for loading zone/employee parking from 8:00 A.M. to 5:30 P.M.[6] Signs denoting the parking spots were to be installed at the expense of the unit owner. Subsequent association meetings involved discussion of parking issues. In March 2002, the Stockton Fire Department had difficulty entering the condominium parking lot on an emergency call.
In April 2002, Hassler and Asack, as Trustees, advised the unit owners that parking problems persisted and declared that each unit had the right to approximately eleven parking spaces. The advisory suggested that alternative outcomes might ensue: fines might be imposed; or parking spaces might be marked and assigned; or additional parking might be purchased. Three condominium units/tenants, including the plaintiffs’ unit, were described as “drastically exceeding the number [eleven] of spaces used.” A May 1, 2002 memorandum to all owners from Trustees Hassler and Asack, was recorded with the Plymouth County Registry of Deeds on July 24, 2003. The memorandum indicates that on April 18, 2002, “. . . a quorum was present and it was voted that due to the effect the parking situation was having on TGA Nautilus’s business, TGA Nautilus would be allowed to mark and post signs on 45 parking spots for their customer’s use.” Except for the plaintiffs’ signatures, the signatures of all other owners are affixed to the memorandum, indicating approval of the measure. The plaintiffs’ signature line is blank and does not indicate whether the plaintiffs were in favor or opposed to the proposal.[7]
Hassler and Asack’s concurrent (early 2002) observations of the parking areas led them to the conclusion that La Baron’s customers’ and students’ parking practices[8] — including double and triple-parking, and parking on seeded areas — constituted a circumstance that justified trustee action.
On April 2, 2003, the condominium association’s annual meeting considered, among other topics, the ongoing parking issues. Representative/owners of Unit 7, Unit 7A and the plaintiffs’ Unit 1A were not present at the meeting. Representative/owners of Units 1-4 (Cummings); Units 5-6, 3Aand 8A (Hassler); Units 8-11 (Asack); Unit 2A (Richter); Units 4A, 5A, and 6A (Brueggman); and Unit 9A (Baker) were present at the 2003 meeting. All of those owners present or represented at the annual meeting voted to approve the following, as set forth in the meeting notes:
... to allow each of your organizations 30 days from today to dicuss (sic) a remedy via scheduling classes for your excess parking situations.
In the event a resolution is not reached within 30 days, A vote was passed of fining each school $1,000.00 per unit per quarter. These fines will imposed after 30 days of non compliance. ALL PRESENT VOTED TO APPROVE, MTL OB-STAINED, (sic)
A notice dated April 2, 2003, was sent to La Baron, stating that it was from “all owners of 244 Liberty St. Condominium Trust” and Hassler and Asack in their capacity as trustees. The notice (including misspellings and other errata) reiterated the 30-day parking solution window and potential financial penalties.
The Declaration of Trust and Bylaws of 244 Liberty Street Condominium Trust states in pertinent part:

Article III, Section 3.1 (Number of Trustees; Vacancies):

There shall be at all times not less than two Trustees nor more than eleven such number . . .
Article III, Section 3.2 (Action by Majority):
The Trustees may act by a majority vote at any duly called meeting at which a quorum is present and a quorum shall consist of a majority of the Trustees but in no event less than two Trustees . . .

Article V, Section 5.1 (By-Laws: Powers of the Trustees):

The Trustees acting jointly if there are two or by majority if more than two . . . shall have all the *434 powers and duties necessary for the administration of the offices of the Condominium and may do all things, subject to and in accordance with all applicable provisions of said Chapter 183A and the Master Deed, and, without limiting the generality of the foregoing, the Trustees may, with full power and uncontrolled discretion, at any time and from time to time and without the necessity of applying to any court or to the Unit Owners for leave to do so;
(n) Determine the common expenses and collect the common charges from the Unit Owners; to enforce obligations of the Unit Owners and levy and collect reasonable fines against them for violation of reasonable rules and regulations established for the benefit of the Unit Owners;
(o) From time to time to adopt, amend and rescind rules and regulations covering the details of the operation and use of the common areas and facilities;

Article V, Section 5.3.2 (Exclusive Use of Common Areas):

The Trustees may authorize that exclusive use of one of more common areas be assigned to one or more Units for such time and on such conditions as the Trustees may determine, which conditions may, without limitation, include a requirement that the Unit Owners so benefitted pay, as additional common expenses, such costs of said common areas as the Trustees from time to time may determine . . .

Article V, Section 5.6 (Restrictions, Requirements, Rules and Regulations):

The use of the Condominium and each Unit Owner’s Unit shall be restricted to and shall be in accordance with the provisions of said Master Deed, this Trust (including By-Laws and, as to the common areas and facilities, such rules, regulations as the Trustees may adopt pursuant to this Trust)... The Trustees have adopted the Rules and Regulations (the “Rules and Regulations”) set forth in Schedule A annexed hereto, containing such restrictions or any requirements respecting the use of the common areas and facilities as are consistent with provisions of the Master Deed and are designed to prevent unreasonable interference with the use by Unit Owners of their Units and of the common areas and facilities. The Rules and Regulations are hereby expressly made a part of and incorporated by this reference into the By-Laws of this Trust.
The Trustees may at any time and from time to time amend, alter, add to or change the Rules and Regulations by majority vote in accordance with the provisions of this Trust.

Article V, Section 5.8.1 (Meetings of Trustees):

The Trustees shall meet annually on the date of the annual meeting of the Unit Owners ... A majority of the Trustees then in office shall constitute a quorum at all meetings. Such meetings shall be conducted in accordance with such rules as the Trustees may adopt.

Article V, Section 5.8.2 (Meetings of Unit Owners):

There shall be an annual meeting on the Unit Owners . . . Special meetings (including a meeting in lieu of a passed annual meeting) of the Unit Owners may be called at any time by the Trustees . . . Written notice of any special meeting, designating the place, time, day and hour thereof, shall be given by the Trustees to the Unit Owners at least seven (7) days prior to the date so designated.
Article X - Amendments and Termination, Section 10.1. (Amendments):
The Trustees, with the consent in writing of all the Unit Owners, may at any time and from time to time amend, alter, add to or change this Declaration of Trust in any manner or to any extent. . . provided always, however, that no such amendment, alteration, addition or change (a) according to the purport of which the percentage of the Beneficial Interest hereunder of any Unit Owner would be altered or in any manner or to any extent whatsoever modified or affected, so as to be different from the percentage of the individual interest of such Unit Owner in the common areas and facilities as set forth in the Master Deed and any amendment thereto, or (b) which would render this Trust contrary to or inconsistent with any requirements or provisions of Chapter 183A, shall be valid and effective. Any amendment shall become effective upon the recording with the Registry of Deeds of an instrument of amendment . . . signed, sealed and acknowledged in the manner required in Massachusetts for the acknowledgment of deeds by any two (2) Trustees ... setting forth in full the amendment . . . and reciting the consent of the Unit Owners required by this Trust to consent thereto. Such instrument so executed and recorded, shall be conclusive evidence of the existence of all facts and of compliance with all prerequisites to the validity of such amendment . . . Nothing in this paragraph shall be construed as making it obligatory upon the Trustees to amend . . . the Declaration of Trust upon obtaining the necessary consent as hereinbefore provided.
Article XII - Parking Areas and Spaces, Section 12.1 (Common Area):
There shall be no designated parking spaces appurtenant to any Unit. Rather, all parking spaces shall be under the full supervision, control and authority of the Trustees . . .[9]
The Master Deed[10] relating to 244 Liberty Street Condominium states;

*435
Section 5. Description of the Common Areas and Facilities

The common areas and facilities of Phase I and Phase II of the Condominium (herein and in the Master Deed referred to as “Common Elements”) consist of:
(b)(5)(d) The parking spaces now existing or hereafter to be constructed;
(b)(5)(f) Such additional common areas and facilities as may be defined in Chapter 183A . . . The common areas and facilities shall be subject to the provisions of the By-Laws of the 244 Liberty Street Condominium Trust, recorded at Plymouth Registry of Deeds, Book 7797, Page 194 and any rules and regulations from time to time in effect pursuant thereto and the percentage of undivided interest in the common areas and facilities shall be deemed conveyed or encumbered with the Unit even though such interest is not expressly mentioned or described in the conveyance, mortgage or other instrument . . .

Section 7. Restrictions on Use

Said Units shall be subject to the restrictions that, unless otherwise permitted by an instrument in writing duly executed by the Trustees pursuant to provisionsof the By-Law thereof, or unless expressly permitted by the preceding Section 6:
(a) Each Unit shall be used only for purposes and to such extent as will not overload and interfere with any Common Elements or the enjoyment or use thereof by the Owners of other Units;
(d) No interior signs ... and no exterior signs of any kind shall be placed on any portion of the Common Elements or parking areas, except such signs as the Trustees may approve, in their sole discretion, which approval may be arbitrarily withheld, conditioned or delayed;
(h) The outdoor parking areas are intended to be used for the parking of duly registered private passenger automobiles . . .

Section 8. Amendments

The Master Deed may be amended by an instrument in writing (a) signed by the Owners of Units entitled to seventy-five (75%) percent of the undivided interest in the common areas and facilities, and (b) duly recorded with the Plymouth Registry of Deeds; PROVIDED, HOWEVER, that:
(e) No instrument of amendment which alters this Master Deed in any manner which would render it contrary to or inconsistent with any requirements or provisions of Chapter 183A shall be of any force or effect.
G.L.c. 183A, §5(a) provides, in part, “Each unit owner shall be entitled to an undivided interest in the common areas and facilities in the percentage set forth in the Master Deed.”
G.L.c. 183A, §11(d) requires that the by-laws of the organization of unit owners shall provide “(t]he method of adopting and of amending administrative rules and regulations governing the details of the operation and use the common areas and facilities.”
G.L.c. 183A, §ll(e) provides: Such restrictions on and requirements respecting the use and maintenance of the units and the use of the common areas and facilities, not set forth in the master deed, as are designed to prevent unreasonable interference with the use of their respective units and of the common areas and facilities by the several unit owners.

DISCUSSION

Summary judgment shall be granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Smith v. Massimiano, 414 Mass. 81, 86 (1992); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). An adverse party may not defeat a motion for summary judgment by resting merely on the allegations and denials contained in the pleadings, but must set forth specific facts with affidavits, deposition testimony, answers to interrogatories or admissions on file showing that there is a genuine issue for trial. Mass.R.Civ.P. 56(e).
To the extent that the plaintiffs’ complaint requests the court: (1) to declare the rights of the parties pursuant to Mass.R.Civ.P. 57 and G.L.c. 231A; and (2) to find that the Trustees violated or exceeded their authority (as set forth in the Master Deed (as amended), the By-Laws, and G.L.c. 183A, §5(b)) by assigning parking spaces and/or assessing fines, in response the defendants’ summary judgment motion requests the court to declare that Trustees Hassler and Asack acted lawfully and did not exceed their authority. The defendants further request the court to find that the plaintiffs are entitled to no remedy.
In their opposition to the defendants’ motion for summary judgment, the plaintiffs urge the court to declare that the Condominium Trust Declaration of Trust, and By-Laws (Article XII, Section 12.1), preclude the Trustees from allocating parking spaces and assessing fines, and setting forth sign placement requirements.
*436 After review and consideration of: (1) the parties’ submitted affidavits; (2) the Master Deed; (3) the Declaration of Trust; (4) submitted association meeting notes; (5) correspondence and other documents; (6) the court record; and after hearing, the court finds that the undisputed material facts coupled with interpretation of the applicable statutes establish that the Trustees’ actions to alleviate parking pressures and to enhance parking lot ingress/egress were advanced within the proper authority granted the Trustees in the Declaration ofTrust. Article V, Sections 5.1 et seq.; G.L.c. 183A, §ll(d). From the copies of the Master Deed and Declaration ofTrust attached as Exhibits to the plaintiffs’ verified complaint, it does not appear that Rules and Regulations were recorded concurrent with the by-laws. However, the court is inclined to treat verified complaint Exhibits 7 to 9 as providing evidence of the Trustees’ subsequent adoption, publication or recording of certain rules and regulations related to the usage of the condominium complex’s parking lot (as a common area).
This court does not interpret By-Law Article 12.1 as controlling the regulation of common areas such as the complex’s parking lot. The court further determines that the word “appurtenant,” as utilized in By-Law Article 12.1, does not imbue the Unit Owners with rights to any specific parking spaces or to particular number of parking spaces. However, the court also finds that Article 12.1 does grant the Trustees authority to supervise parking lot usage and to approve the erection of exterior signs. See Article V, Section 5.1 et seq., sections (n) and (o); Master Deed, Section 7(d).
Indeed, this case presents factors similar to those circumstances addressed in Johnson v. Keith, supra, in that this court is satisfied that the intent involved in the treatment of 244 Liberty Street Condominium’s common parking areas was not that such common areas and facilities be governed by By-laws. Rather, these concerns were intended to be linked to rules and regulations, administered by the Trustees in the exercise of their reasonable judgment. G.L.c. 183A, § 11(d) and §ll(e). The court finds that the actions taken by the Trustees did not require unanimous assent of all Unit Owners, nor were amendments to the By-Laws required as a prerequisite to the Trustees taking action to control and supervise the complex’s parking lot for the overall benefit of the Unit Owners. The Trustee actions constituted reasonable restrictions and regulation of all Unit Owners’ uses of the common area parking lot. Kaplan v. Boudreau, 410 Mass. 435, 443 (1991).

ORDER

For the foregoing reasons, and for the reasons otherwise set forth in the defendants’ Memorandum of Law in support of their summary judgment motion, in their Rule 9A(b)(5) Statement of Undisputed Facts and Legal Elements, and in their Opposition to Plaintiffs’ Cross Motion for Summary and Declaratory Judgment, summary judgment is ALLOWED in favor of defendants Hassler and Asack, as Trustees of 244 Liberty Street Condominium Trust. The plaintiffs’ cross motion for summary judgment is DENIED.
Pursuant to Mass.R.Civ.P. 57 and G.L.c. 231A, relating to plaintiffs’ verified complaint Prayers for Relief, (Nos. 6., 7., 8., 9., and 10.), the court determines and declares that the Trustees possessed the authority and exercised their properly designated authority in a lawful manner: (1) regarding allocation of parking spaces within the common area parking lot at the 244 Liberty Street condominium complex; (2) regarding the Trustees’ permitting placement of exterior signs in the common areas of the common area parking lot at the 244 Liberty Street condominium complex; and (3) regarding the Trustees’ assessing, charging, billing, or collecting of parking area fines.
The court declines to order the Trustees to rescind and cancel the July 24, 2003 recorded Notice, Plymouth Registry of Deeds, Bk. 25903, Pg. 347 (Instrument No. 158252).
The court declines to order the Trustees to rescind and cancel any parking fines or assessments and the November 7, 2003 condo fee in the amount of $2,400.00.
The court declines to order the Trustees to restore or repay any fines already paid by the plaintiffs.
The March 1, 2004 Order denying the plaintiffs’ request for preliminary injunction (as delineated in verified complaint Prayers for Relief Nos. 1., 2., and 3.) shall not be vacated or altered by this court.

By motion of the plaintiffs pursuant to Mass.R.Civ.P. 41(a), the Count III G.L.c. 93A claims against the volunteer Trustees was dismissed.

The undisputed material facts are garnered from the defendants’ Rule 9 (A) (b)(5) Statement and the plaintiffs Response/Cross-Rule 9(A)(b)(5) Statement submitted in support of their cross motion for summary judgment. The court has also taken into consideration submitted sworn affidavits, including those of Richard M. Hassler and Robert D. Wroble.

The other trade school is described as one that offers “courses in plumbing and related fields.”

The plaintiffs dispute whether parking issues have been a “primary” topic at association meetings.

The plaintiffs state that their representative understood the vote to involve establishment of handicapped parking rather than loading/employee parking. The association meeting notes indicate that the plaintiffs’ representative, Pat Sawyer, participated and voted (along with all the others) in favor of: (I) repainting the parking lot with white lines; (2) painting and installing 5 handicapped spots with signs; and (3) allowing 2 loading zone/employee parking spots per unit with signs. No affidavit from the plaintiffs’ representative Sawyer is presented to contradict the accuracy of the meeting notes.

The plaintiffs dispute that the measure constituted an administrative rule change. They contend that this vote was an improper circumvention of By-Law Article X, Section 10.1

Hassler’s affidavit also cites the other trade school (Old Colony Trade School) and a business then operating under the name “Bureau Veritas,” as overburdening the parking lot with employees, students’ and/or retail customers’ vehicles.

The parties agree that the parking lot contains 226 spaces.

The Master Deed has been amended twice.